Jess G. BACHNER, d/b/a Fairbanks Aircraft Service, Petitioner,

v.

Al PEARSON, Tom Martin, Stanislaw Poborski and Leon Riley, Respondents.

No. 868.

Supreme Court of Alaska.

Oct. 13, 1967.

Charles E. Cole, Fairbanks, Roger G. Connor, Juneau, for petitioner.

Robert A. Parrish and Patrick E. Murphy, Fairbanks, for respondents.

## OPINION

Before NESBETT, C. J., and DIMOND and RABINOWITZ, JJ.

DIMOND, Justice.

This is a personal injury action brought by respondents against petitioner in July 1963, involving the crash of petitioner's Piper Comanche airplane. The principal basis for respondents' claim is that petitioner was negligent in failing to properly inspect and maintain the airplane's muffler and exhaust system, and that as a result, carbon monoxide escaped into the cabin of the airplane asphyxiating the pilot, respondent Pearson, resulting in the crash.

Respondents made efforts to have the muffler and exhaust system of the airplane produced by petitioner for their inspection. On April 25, 1967 the court below found that petitioner's conduct in regard to the location and production of the muffler was contumacious of orders of the court and not in good faith, and entered the following order:

That all facts relating to the muffler and exhaust system of Piper Comanche aircraft PA 24–250, Ser. No. 24–1809, shall be and the same are taken to be established for the purposes of this action in accordance with the claims of the plaintiffs.

Petitioner asks us to review that order and vacate it. We have decided to grant review because we believe the order in question is of sufficient importance as to

justify deviation from the normal appellate procedure by way of appeal.[1]

The court's order was made pursuant to Civil Rule 37(b) (2). That rule provides that if a party refuses to obey an order made under Civil Rule 34[2] to produce any document or other thing for inspection:

the court may make such orders in regard to the refusal as are just, and among others the following:

(a) An order that the matters regarding which the questions were asked, or the character or description of the thing or land, or the contents of the paper, or the physical or mental condition of the party, or any other designated facts shall be taken to be established for the purposes of the action in accordance with the claim of the party obtaining the order * * *.

The question here is whether petitioner refused to obey an order made under Civil Rule 34 to produce the airplane muffler for respondents' inspection, so as to justify the court's order made under Civil Rule 37(b) (2) (a).

On March 15, 1966 respondents filed a motion to produce the muffler for inspection and examination. On March 22, 1966 petitioner filed a statement in response to the motion to produce which said:

Jess Bachner, an individual doing business under the name and style of Fairbanks Aircraft Service, has no objection to the entry of an Order directing him to produce the muff, muffler, exhaust and heat exchanger system but he has previously testified under oath in a deposition taken in this action, he does not now have in his possession the property sought

1. Supreme Ct.R. 24(1).

2. Civil Rule 34 provides in part:
   Upon motion of any party showing good cause therefor and upon notice to all other parties, and subject to the provisions of Rule 30(b), the court in which an action is pending may—
   (1) order any party to produce and permit the inspection and copying or

   photographing, by or on behalf of the moving party, of any designated documents, papers, books, accounts, letters, photographs, objects, or tangible things, not privileged, which constitute or contain evidence relating to any of the matters within the scope of the examination permitted by Rule 26(b) and which are in his possession, custody or control * * *.

to be inspected and therefore cannot produce it.

Jess Bachner will produce any property in his possession, but does not want his failure to object to the motion to be taken as an acknowledgment of ability to produce the property mentioned in the motion.

On April 6, 1966, at a hearing on respondents' motion to produce, petitioner's counsel agreed that petitioner would produce an affidavit the following Friday in support of the showing made in support of his statement quoted above. Such an affidavit was never filed.

Our dissenting colleague points out that no "formal" order to produce was ever entered. That may be true. No such order appears in the record on review prepared by the clerk of the superior court at petitioner's request. But it is clear that it was petitioner's understanding that he had been ordered by the court to produce the muffler for inspection, whether such order could be characterized as "formal" or not. In April 1967 petitioner filed an affidavit in opposition to the motion previously filed by respondents which gave rise to the order being reviewed here. In such affidavit petitioner stated that "he knew he was under an order of the court to produce the muffler."

The question here is whether petitioner refused to obey such an order and whether the sanction imposed by the court below was justified. As mentioned above, petitioner made a statement on March 22, 1966 in response to respondents' motion to produce the muffler that he did not have it in his possession and therefore could not produce it. If these were the only facts involved, it would be questionable that the court could hold that petitioner had refused to obey the order to produce the muffler, so as to justify imposition of the sanction permitted by Civil Rule 37(b). But there were other facts to be considered by the court.

At a deposition taken on January 13, 1965 petitioner stated that he knew where the muffler was at that time and that it was in his possession. Affidavits of two witnesses filed in April 1967 show that petitioner had the muffler in his possession, and knew that it was in his possession, in June 1965. In December 1966, in response to a request for admissions directed to petitioner by respondents, petitioner stated that the muffler had been turned over to him by the C.A.B. or the F.A.A., that respondents had requested on several occasions that petitioner produce the muffler, and that petitioner was the last known person to have possession of the muffler.

In his affidavit filed in April 1967, petitioner stated that he had been notified in March 1967 by his counsel that an order had been entered requiring him to produce the muffler, and that "The first time that he was notified that a request that he produce the muffler was made was in March 1967, more than four years after the accident." That such a statement is true appears highly unlikely, in view of the fact that a year before in March 1966 petitioner had made a statement, directed to respondents' motion for an order of production, to the effect that he had no objection to the entry of such an order, but that he could not produce the muffler because it was not in his possession.

In addition, petitioner stated in his affidavit:

In response to interrogatories number 108 and 109, he did not respond to them immediately because he was searching for the muffler and wanted to wait until those efforts were exhausted before responding to them. He could easily have denied having any knowledge where the muffler was and rested on that denial thereafter, *but he knew he was under an order of the court to produce the muffler* and wanted to make a good faith effort to comply with it before responding to the interrogatory.

[Emphasis added.]

Such a statement is significant. The interrogatories mentioned were directed to pe-

titioner in December 1966.[3] If petitioner knew that he was under an order of the court to produce the muffler at the time he received the interrogatories in December 1966, then he knew of such order prior to March 1967, contrary to the statement contained in his April 1967 affidavit that he did not know of such an order until March 1967.

Moreover, petitioner was dilatory in responding to the interrogatories. In December 1966 the court allowed petitioner until February 1, 1967 to answer the interrogatories. They were not answered until April 19, 1967, after there had been filed respondents' motion which led to the entry of the order being reviewed here.

Finally, it was considered significant by the court below that with respect to the March 1966 motion to produce the muffler for inspection, petitioner never filed the affidavit in support of the showing that he did not have the muffler in his possession, although he agreed that he would produce such an affidavit in a few days after April 6, 1966.

In summary, petitioner's contention seems to be that he was not aware of the necessity of producing the muffler until March 1967, and that thereafter he conducted an intensive search and found the muffler on or about April 11, 1967 and was then willing to produce it. On the other hand, the record could very well indicate to the court below that petitioner knew of the necessity of producing the muffler at the latest in March 1966, but did not get around to actually producing it until over a year later in April 1967. In these circumstances, it would appear that the court below could conclude that petitioner's failure to do anything about complying with the requirement to produce the muffler between March 1966 and April 1967 constituted a "refusal to obey" an order of production within the meaning of Civil Rule 37 (b) (2).

In determining whether a party's actions constitute a refusal to obey an order to produce and whether the sanction expressly provided by Rule 37(b) (2) (a) should be imposed, the superior court's discretionary authority is involved. We will reverse only if we are convinced that there has been an abuse of discretion. We are not so convinced in this case. In the light of the events surrounding respondents' efforts to have petitioner's muffler produced for their inspection and examination, the court below could well have concluded that petitioner was recalcitrant and was not in good faith attempting to comply with what was required of him. We cannot say that the court had no justification for imposing the sanction that it did under Civil Rule 37(b) (2) (a).

The order of the superior court is affirmed.

RABINOWITZ, Justice (dissenting).

This petition for review concerns the appropriateness of discovery sanctions imposed pursuant to Civil Rule 37(b) (2) (a).[1]

---

3. The interrogatories referred to inquired of petitioner whether he had the muffler in his possession or knew of its location. Petitioner's answer was that the interrogatories would be answered by supplemental answer, and that the information required to answer such interrogatories was being obtained. On December 22, 1966, at a pre-trial conference, petitioner was given an extension of time until February 1, 1967 in which to answer the interrogatories. They were not answered until April 19, 1967.

1. This rule of discovery provides that:
   If a party * * * refuses to obey an order made under subdivision (a)

of this rule requiring him to answer designated questions, or an order made under Rule 34 to produce any document or other thing for inspection * * * or to permit it to be done * * * the court may make such orders in regard to the refusal as are just, and among others the following:
   [a] An order that the matters regarding which the questions were asked, or the character or description of the thing * * * or any other designated facts shall be taken to be established for the purposes of the action in accordance with the claim of the party obtaining the order * * *.

In my view the record does not justify the harshness of the particular sanctions which the trial court entered against petitioner Bachner.[2]

On November 15, 1962, a Piper Comanche, which was owned by petitioner Bachner, d/b/a Fairbanks Aircraft Service, crashed. At the time the accident occurred the aircraft was piloted by respondent Pearson and respondents Martin, Poborski, and Riley were passengers.[3] In July and August of 1963, separate suits were commenced by respondents against petitioner for personal injuries sustained in the crash.[4]

Respondents based their causes of action upon negligence (including gross negligence) and breach of express and implied warranty theories. They alleged that due to petitioner's negligence and breach of warranties the pilot of the aircraft (respondent Pearson) "became asphyxiated by escape of carbon monoxide from the exhaust and heat exchanger system into the cabin of the airplane * * * causing the airplane to crash * * *." In part respondents specifically alleged that petitioner was negligent in that he failed to "properly inspect and maintain the exhaust and heat exchanger system in a safe condition." It was further alleged that petitioner breached express and implied warranties contained in the lease to the effect that the "aircraft and its muffler, exhaust and heat exchanger system were safe and fit for the

purpose for which they were leased, intended and used."

The establishment-preclusion order which petitioner seeks to have us review was entered pursuant to Civil Rule 37(b) (2) [a].[5] I read this order as determining the liability aspects of respondents' causes of action against petitioner. The order (captioned judgment) reads in part as follows:

That all facts relating to the muffler and exhaust system of Piper Comanche aircraft PA 24-250, Ser. No. 24-1809, shall be and the same are taken to be established for the purposes of this action in accordance with the claim of the plaintiffs.[6]

My study of the record has convinced me that petitioner's conduct did not justify depriving him of his right to litigate the merits of the liability issues in these important cases. A chronological breakdown of the history of the litigation is essential to an explanation of my decision.

After the crash occurred in November of 1962, respondents' attorney assigned a private investigator to the case. On February 6, 1963, in the course of his investigation, respondents' investigator asked petitioner if he could examine the muffler. According to the investigator, he was then told by the petitioner that "he thought the muffler was in his dump and gave me permission to look through the dump." Respondents' investigator then searched the

2. The matter comes before this court upon a petition for review. I am of the opinion that the superior court's order which is now questioned is of such importance to the just disposition of this litigation that review should be granted, pursuant to Rules 23 and 24, Rules of the Supreme Court of Alaska.

3. Respondent Pearson had leased the plane from petitioner.

4. These separate suits were subsequently consolidated and on February 15, 1967, a single consolidated amended complaint was filed on behalf of the respondents.

5. Supra note 1.

6. Although not required by our Rules of Civil Procedure, the trial judge filed findings of fact and conclusions of law pertaining to the Rule 37(b) (2) motion. In the conclusions of law, it is stated in part that:
    1. Rule 37(b) (2) permits the Court to enter the orders requested by the plaintiffs.
    *   *   *   *   *
    3. That the conduct of defendant Bachner entitled the plaintiffs to an order:
    (a) That all facts relating to the defective condition of said muffler should be ordered established.

area indicated by petitioner but was unable to locate the muffler. Upon informing petitioner of his unsuccessful quest, the investigator was told that "he [petitioner] guessed it was in the bottom of the Chena River." As previously mentioned, the record reflects that in July and August of 1963 respondents instituted separate suits against petitioner.

The next occurrence of importance in this litigation involves the taking of petitioner's deposition on January 13, 1965. It is of significance that this deposition was not taken until over a year and one-half after formal commencement of the law suits. During respondents' examination of petitioner, the following transpired:

Q  Do you know where that muffler and muff is at the present time?

A  Yes.

Q  And where is it?

A  I have it.

Q  Do you have it in your possession?

A  Yes.[7]

I believe that respondents' actions at this point in the case are particularly crucial to the proper resolution of the question now before this court. After gaining knowledge that the muffler and muff were in petitioner's possession, respondents failed to take any steps during the next year to obtain possession for inspection purposes.

In December of 1965 respondents again took petitioner's deposition. During this second interrogation, petitioner testified that he did not know the whereabouts of the muffler.[8] Then, on March 15, 1966, in respondents' separate suit against the Piper Aircraft Corporation, they moved for an order requiring petitioner, who was not a party to that litigation, to produce for inspection "the muff, muffler, exhaust and heat exchanger system which was attached to or a part of the Piper Comanche."[9] When the motion came on for hearing on April 6, 1966, petitioner's counsel informed the court that he had agreed with respondents' counsel "that I should produce an affidavit of Mr. Bachner stating that he did not have the cylinder—which I am in the process of preparing." The record shows that no formal order was thereafter entered requiring petitioner to produce the muff, muffler, exhaust, and heat exchanger

7.  There is an affidavit on file from an insurance adjuster who was investigating on behalf of counsel for Piper Aircraft Corp. in connection with respondents' separate suit against this corporation. In this affidavit it is asserted that on June 2, 1965, in the presence of another adjuster he visited petitioner's business premises. In this affidavit it is also stated that:

He [petitioner] brought out a muffler which he indicated was the muffler in the 1960 Piper Comanche which had been in the accident on November 15, 1962. He indicated the engine of the 1960 Piper Comanche had been put in another aircraft and the hull had been sold for salvage or destroyed.

In the presence of Mr. Bachner we examined the muffler and obtained five Polaroid photographs.

8.  Petitioner answered that he had the muffler put away but "when a guy cleaned up he must have threw it out because I can't find it."

In conjunction with this December 17, 1965, deposition, petitioner was served with a subpoena duces tecum. Petitioner produced at the deposition all the items which were requested of him with the exception of the muffler.

9.  In response to the motion, petitioner filed a document captioned in part "Statement of Jess Bachner Directed To Motion To Produce." This statement reads in full as follows:

Jess Bachner, an individual doing business under the name and style of Fairbanks Aircraft Service, has no objection to the entry of an order directing him to produce the muff, muffler, exhaust and heat exchanger system but as he has previously testified under oath in a deposition taken in this action, he does not now have in his possession the property sought to be inspected and therefore cannot produce it.

Jess Bachner will produce any property in his possession, but does not want his failure to object to the motion to be taken as an acknowledgment of ability to produce the property mentioned in the motion.

system.[10] The record also establishes that no affidavit, as agreed upon by petitioner's counsel at the April 1966 hearing, was ever filed.[11]

Returning to the litigation at bar, the record shows that on December 19, 1966, petitioner was served with one hundred and twelve interrogatories.[12] In four of these interrogatories, petitioner was questioned as to his knowledge of the location of the muffler.[13] On March 16, 1967, respondents moved to strike petitioner's pleadings and to enter default. The basis of this motion was that petitioner "failed and refused to make discovery in accordance with the provisions of Rules 33, 34, 36, 37 and 38, and has failed to comply with the pretrial conference of this Court dated December 22, 1966, and the pretrial order of this Court." In his March 21, 1967, answers to these four interrogatories, petitioner said that they would be answered by a supplemental answer as the information sought by the interrogatories was "being obtained."[14] The motion to strike and enter default was denied on April 6, 1967.[15]

Thereafter, on April 11, 1967, petitioner's counsel notified counsel for respondents by letter that "the muffler and shroud which was on the Piper Comanche * * * on the date of the accident * * *" had been located.[16] On April 13, 1967, respondents again moved "to strike answer, enter judgment, and establish facts." Respondents grounded this second motion on the provisions of Civil Rule 37(b) (2) and petitioner's purported failure to answer the interrogatories relating to the muffler and the order of the court pertaining to the production of the muffler. On April 19, 1967, petitioner filed a document entitled "Supplemental Answers to Interrogatories."[17]

This second motion was granted by the superior court acting pursuant to Civil Rule 37(b) (2). Under the superior court's or-

10. At the conclusion of the April 6, 1966, hearing, the court stated:
    Very well. Upon agreement of counsel then, Mr. Bachner would produce an affidavit in support of the showing made by Mr. Bachner heretofore.

11. Petitioner's counsel, Mr. Cole, states that this omission occurred through his oversight.

12. Simultaneously, petitioner was served with thirty-two requests for admissions.

13. Interrogatory number 108 reads:
    Does the defendant, or any of the defendant's agents, employees or representatives have in their possession, or have any knowledge of the location of the muffler which was on Piper PA24–250 serial No. 24–1809 on November 15, 1962.
    Interrogatory number 109 reads:
    If so, state:
    The name and address of such person.
    Also pertinent are interrogatories numbered 73 and 74. In the first of these questions, petitioner was asked:
    Does defendant now have in its possession or under its control any of the pieces or parts of this airplane?
    In the second interrogatory petitioner was asked:
    If so, set forth:
    (a) A list of all such parts and pieces.
    (b) The present location of each part and piece, and particularly any pieces of the cabin heat system, including the muff and muffler.

14. A pretrial conference was held on December 22, 1966, and a pretrial order entered on February 6, 1967. By the terms of this order, petitioner was given an extension until February 1, 1967, in which to answer respondents' requests for admissions. Discovery was ordered completed thirty days prior to trial, and the case was given a May 1, 1967, trial date setting.
    Petitioner also answered "yes" to interrogatory number 73 and to interrogatory number 74 replied, "This interrogatory will be answered by supplemental answer. This information is being obtained."

15. The motion was denied by Superior Court Judge Everett W. Hepp.

16. Petitioner's counsel also informed opposing counsel that he could examine and inspect the muffler and shroud at his office upon "reasonable notice."

17. This document reads in its pertinent parts as follows:
    Answer to Interrogatory No. 108. Yes.
    Answer to Interrogatory No. 109. Jess G. Bachner, Fairbanks, Alaska. The actual possession of the muffler is now in possession of Charles E. Cole, Room 218, Lavery Building, Fairbanks, Alaska.

der all facts relating to the muffler and exhaust system of the Piper were taken to be established "in accordance with the claims" of respondents. In his findings of fact the trial judge found that petitioner "intentionally made false statements under oath in contravention of the orders of this Court relating to the material facts arising out of the condition of the muffler * *." The trial court also found that petitioner's "conduct in regard to the location and production of this muffler was fraudulent and contumacious of the orders of this Court * * *." [18]

From a reading of the text of Civil Rule 37(b)(2), it is apparent that the sanctions there provided for do not come into play unless a party has refused to obey an order made under Rule 37(a).[19] In regard to the failure-to-answer-interrogatories underpinning of the superior court's establishment-preclusion order, I am of the opinion that support in the record is lacking. In short, respondents never obtained an order under subdivision (a) of Civil Rule 37 requiring petitioner to answer any specific interrogatories pertaining to the muffler and exhaust system of the aircraft in question. Absent any such order, Civil Rule 37 (b)(2)[a] and [b] establishment-preclusion sanctions are inapplicable.

As to the second ground for the court's order, namely, petitioner's asserted refusal to comply with the superior court's order to produce the muffler, I cannot find in the record any order of the superior court which required this of petitioner. Admittedly, respondents, in a separate case in which Piper Aircraft was the sole defendant, moved for an order requiring petitioner to produce the muffler. As a result of the motion, petitioner's counsel and counsel for respondents agreed that petitioner would file an affidavit that the muffler was not in petitioner's possession. The record shows that no such affidavit was filed by petitioner, although petitioner's attorney states this failure was due to his own oversight.

From the foregoing, I cannot discern the basis for the court's entry of a Civil Rule 37(b)(2)[a] establishment-preclusion order. There was never any order entered which required petitioner to answer particular interrogatories, nor was there any Civil Rule 37 order entered requiring petitioner to produce the muffler. In such circumstances I would hold that the imposition of sanctions under Civil Rule 37(b)(2)[a] are not authorized.

In addition to the foregoing, I am of the view that our opinion in Oaks v. Rojcewicz[20] requires reversal of the superior court's establishment-preclusion order. In that case we held that before Civil Rule 37(a)(2)[c] sanctions (dismissal of the party's cause of action) can be imposed

18. Additionally, the trial court found that petitioner's conduct amounted to "an obstruction of justice in violation of the statutes of this State, and that discovery was not made in good faith."

19. Civil Rule 37(a) reads in part:
   If a party or other deponent refuses to answer any questions propounded upon oral examination, the examination shall be completed on other matters or adjourned, as the proponent of the question may prefer. Thereafter, on reasonable notice to all persons affected thereby, he may apply to the court in the judicial district where the deposition is taken for an order compelling an answer. Upon the refusal of a deponent to answer any interrogatory submitted under Rule 31 or upon the refusal of a party

to answer any interrogatory submitted under Rule 33, the proponent of the question may on like notice make like application for such an order.
   As to the necessity of an order requiring the recusant to make discovery before the court may enter a preclusion order, see Wembley, Inc. v. Diplomat Tie Co., 216 F.Supp. 565, 572–573 (D.Md.1963).

20. 409 P.2d 839 (Alaska 1966). Discretion of the trial court is involved here and under the test we articulated in Sanuita v. Hedberg, 404 P.2d 647, 650 (Alaska 1965), I am left with "the definite and firm conviction on the whole record that the judge had made a mistake" in entering the questioned establishment-preclusion order.

there must be a willful noncompliance with a production order. Assuming the existence of an order to produce the muffler, in my opinion the record fails to establish a willful refusal on petitioner's part to comply with such an order.

A reasonable inference from the record is that the discovery aspects of this litigation were accorded rather casual treatment by respective counsel from the very inception of this litigation in July and August of 1963. The total circumstances appearing in the record,[21] giving consideration to petitioner's conduct, the prejudice or lack of prejudice to respondents resulting from petitioner's discovery conduct, and the impact of petitioner's conduct on the progress of the litigation, do not justify the imposition of sanctions which prevented adjudication of the merits of the liability issues.[22] The trial date setting of this cause is still sufficiently advanced to permit adequate inspection and authentication of the muffler in question. Additionally, the trial court has ample authority to impose lesser sanctions against petitioner and petitioner's counsel for any delays and disruptions which have occurred in conjunction with discovery proceedings in this litigation.

For the foregoing reasons I would grant the petition for review, reverse the establishment-preclusion order, and remand the matter for imposition of less severe sanctions and for trial on the merits of the liability and damage issues.

---

21. I believe it aslo of significance to point out that the trial court entered its establishment-preclusion order without the benefit of demeanor evidence. In short, I fail to see how the trial court could have determined that, in December 1965 and March 1966 when petitioner stated he did not know the location of the muffler, he was acting in bad faith and/or lying.

22. In Oaks v. Rojcewicz, 409 P.2d 839, 844 (Alaska 1966), we approved the following language which appeared in Syracuse Broadcasting Corp. v. Newhouse, 271 F.2d 910, 915 (2d Cir. 1959):

Yet if we 'are convinced that the court below has exceeded a proper discretion

in that the order imposed was too strict or was unnecessary under the circumstances, we would be remiss in our duties if we did not set that order aside.'

In light of my decision I find it unnecessary to decide the constitutional implications of the order which was entered below. Compare Societe Internationale v. Rogers, 357 U.S. 197, 78 S.Ct. 1087, 2 L.Ed.2d 1255 (1958) ; Hammond Packing Co. v. State of Arkansas, 212 U.S. 322, 29 S.Ct. 370, 53 L.Ed. 530 (1909) ; Hovey v. Elliott, 167 U.S. 409, 17 S.Ct. 841, 42 L.Ed. 215 (1897) ; Civil Rule 37 (b) (1) ; Note of Advisory Committee on Rules to Rule 37, Federal Rules of Civil Procedure.