**CITY OF KOTZEBUE, Appellant,**

v.

**Percy IPALOOK, Jr., Appellee.**

**No. 1033.**

Supreme Court of Alaska.

Dec. 5, 1969.

Stephen S. DeLisio, Merdes, Schaible, Staley & DeLisio, Fairbanks, for appellant.

C. R. Kennelly, Nome, for appellee.

Before NESBETT, C. J., and DIMOND, RABINOWITZ, BONEY and CONNOR, JJ.

RABINOWITZ, Justice.

On January 13, 1966, Percy Ipalook was shot by Officer Eisenhower, a city of Kotzebue policeman. Claiming no justification for the act, Ipalook instituted suit against the city of Kotzebue for damages.[1] At trial, Ipalook received a $25,000 jury verdict. Appellee city of Kotzebue then moved, pursuant to Civil Rule 59(a), for remittitur and alternatively for a new trial limited to the issue of damages. In its order of remittitur, the trial court remitted the sum of $10,000.[2] Ipalook accepted the order of remittitur and an amended judg-ment was entered in the amount of $15,000 plus costs and attorneys' fees.

During counsel for Ipalook's voir dire examination of the jury panel, five prospective jurors were asked if they owned interests in any insurance company. In addition to these questions, counsel for Ipalook asked one juror whether he had ever worked for an insurance company. As its first specification of error, the city of Kotzebue contends that the trial court committed error in permitting Ipalook's counsel to ask these questions pertaining to insurance.

█ Most jurisdictions permit the questioning of jurors respecting their interests in, or connections with, insurance companies provided such questions are propounded in good faith.[3] Appellant asserts that bad faith on the part of Ipalook's counsel is demonstrated by the latter's knowledge of the size and location of the community where the trial took place.[4] A determination of such good faith issues must be made in light of all the relevant circumstances. One such circumstance is the fact that trial counsel for Ipalook claimed that he had no actual knowledge of the absence of any possibility that any of the prospective jurors had any interest in, or connection with, an insurance company.[5] Quite possibly some prospective

---

1. Originally Ipalook sought punitive damages in addition to compensatory damages. Prior to trial the claim for punitive damages was abandoned.

2. The order of remittitur reads in part as follows:
   [G]ranted to the sum of $10,000.00, conditioned upon [Ipalook's] * * * consent * * * on or before July 12, 1968, to accept $15,000 in full satisfaction of the judgment herein, in lieu of the $25,000 verdict awarded by the jury * * *.
   * * * [I]n the event [Ipalook] * * * fails or refuses to consent or stipulate to said remittitur on or before July 12, 1968, Defendant shall be entitled to a new trial solely on the issue of damages * * *.

3. Annot., 4 A.L.R.2d 761, 792 ff. (1949).

4. In this regard, appellant states in his brief that:
   In view of the very small size and remote location of the Kotzebue community, from which all of these jurors were drawn, it was exceedingly unlikely that any of them currently were employed by or owned any interest in an insurance company. All of the prospective jurors were Eskimos who had been born, raised and lived all of their lives in the remote Arctic regions of Alaska, most of them in or around Kotzebue. Questions by counsel on voir dire revealed such a background with regard to most of the jurors.

5. Out of the presence of the jury, counsel for the city of Kotzebue said:
   I venture to say that Mr. Kennelly knows just as well as I do that none

juror might have sold insurance, or held stock in an insurance company, or investigated claims for an insurance company. Our review of the record has not left us with a firm conviction that the trial court abused its discretion in permitting Ipalook's counsel to ask these questions pertaining to insurance. We therefore hold that no error was committed by the trial court in permitting such questioning on voir dire.

■ Appellant city of Kotzebue's second specification of error is that the superior court erred in failing to sustain its challenge for cause which was directed against juror Lorena Wright. AS 09.20.010 of Alaska's Code of Civil Procedure provides that "A person is qualified to act as a juror if he is * * * (5) in possession of his natural faculties * * *." Civil Rule 47(c) (1) establishes grounds for challenges for cause, one of which is that "the person is not qualified by law to be a juror." The basis of the city of Kotzebue's challenge of juror Lorena Wright was that her hearing was impaired. In ruling on this challenge, the trial court said, in part, "I think she's just shy and at this time I'm going to overrule the objection." When the city subsequently renewed its challenge, the trial court said: "She states that she's heard everything that's been said. * * * I'm going to overrule objections." Trial court discretion as to challenges for cause is interfered with only in exceptional circumstances and to prevent miscarriages of justice.[6] We find no such abuse of discretion in the trial court's rejection of the city's challenge for cause of juror Lorena Wright,[7] especially since the city did not exhaust its peremptory challenges.

For its third specification of error, the city of Kotzebue argues that the superior court erroneously sustained Ipalook's challenge for cause to prospective juror Elizabeth Cross. Ipalook's counsel challenged juror Cross on the ground that she was related to one of the "major witnesses" and "major parties" on the other side. It was established that the prospective juror was the wife of John Cross, mayor of Kotzebue at the time Officer Eisenhower was hired and at the time the shooting of Ipalook occurred.

In Borman v. State[8] the general rule regarding a prospective juror's relationship to a witness was articulated in the following manner:

> Neither mere acquaintance * * * nor mere relationship to witnesses, other than parties, is sufficient basis for challenging a prospective juror for cause. * * * Bias on the part of prospective jurors will never be presumed, and the challenging party bears the burden of presenting facts, in addition to mere relationship or association, which would give rise to a showing of actual prejudice.

■■ We agree with appellant that relationship to a witness does not fall within any of the enumerated grounds under Civil Rule 47(c) upon which a prospective juror can be challenged for cause. Because of the context in which this issue has been raised, we need not at this time decide whether the grounds enumerated in Civil Rule 47(c) are exclusive. For here, even assuming it was error to have excused juror Cross for cause, we can discern no resultant prejudice to appellant city of Kotzebue flowing from the trial court's ruling. As we noted previously, the city of Kotzebue did not exhaust its peremptory challenges.[9] A further basis for disposition of this assertion of error arises from the failure

---

of these people never have, ever will have or do at the present time do have any interest of any connection with any insurance company.

To this statement counsel for Ipalook replied, "I don't know that Your Honor."

6. Mitchell v. Knight, 394 P.2d 892, 897 (Alaska 1964) ; Civ.R. 47(c).

7. Lyda v. United States, 321 F.2d 788, 790–791 (9th Cir. 1963) ; State v. Reed, 206 La. 143, 19 So.2d 28, 29 (1944).

8. 1 Md.App. 276, 229 A.2d 440, 441–442 (1967).

9. Note 7 *supra*.

of the city of Kotzebue to make a timely objection to the trial court's ruling dismissing juror Cross. By virtue of this omission, the city of Kotzebue is thus precluded from raising the question at this time.[10]

In its fourth specification of error, the city of Kotzebue advances the argument that the trial court erred in limiting its cross-examination of the witness Frank Ferguson. This witness had been called by Ipalook and on direct had testified that he was present in the Eskimo Building in Kotzebue on the night that Officer Eisenhower shot Ipalook. Ferguson testified that he saw Eisenhower immediately after he had shot Ipalook, and that in the latter's attempt to go up the stairs leading from the basement of the Eskimo Building, Eisenhower knocked Ipalook over. Upon cross-examination, counsel for the city attempted to inquire into events which occurred immediately prior to those to which Ferguson had testified on direct examination. Ipalook objected that such questions were beyond the scope of his direct examination of the witness. The trial court sustained Ipalook's objections indicating that its ruling would not preclude appellant from calling Ferguson either as its own witness or "in rebuttal."[11]

In Fajeriak v. State[12] and Pederson v. State,[13] we held that determination of the scope of permissible cross-examination lies within the trial court's discretion. Also pertinent is Civil Rule 43(g) (7) wherein it is provided that:

> An adverse party may cross examine a witness as to any matter stated in the direct examination or connected therewith * * *.[14]

█ We are of the view that the trial judge's administration of Civil Rule 43(g) (7) was too restrictive. For in our opinion, the subject matter of the prohibited attempted cross-examination related to facts and circumstances which were "connected" with matters Ferguson had testified to on his direct examination.[15] We further con-

---

10. Mitchell v. Knight, 394 P.2d 892, 897 (Alaska 1964); Ahlstrom v. Cummings, 388 P.2d 261, 262 (Alaska 1964); Thomson v. Wheeler Const. Co., 385 P.2d 111, 115 (Alaska 1963); Gregory v. Padilla, 379 P.2d 951, 953 (Alaska 1963).

11. The record shows that at the time of trial the witness Frank Ferguson was in court "representing" the city of Kotzebue. In sustaining these objections to the scope of cross-examination, the trial judge said:

> Well, I'm going to * * * at this time, this is not necessarily the crucial stage, both parties will have the right to put on their proof, I'm going to sustain the objection at this time. Counselor, you may have the right to put on this evidence by this witness at a later time, either as your own witness or in rebuttal, if need be. I'm going to sustain the objection at this time and see where we lead to.

Later in again sustaining appellee's objection to the scope of cross-examination of Ferguson, the trial judge said:

> I'm going to sustain the objection at this time with the understanding counselor, you may * * * you have the right to get this evidence before

the jury either in your own case or on rebuttal.

12. 439 P.2d 783, 785-786 (Alaska 1968):

13. 420 P.2d 327, 337-338 (Alaska 1966).

14. Since the witness Ferguson was a member of the city council of the city of Kotzebue at the time the trial was held, Civil Rule 43(g) (12) has potential relevance.

> A party may call an adverse party or an officer, director or managing agent of a public or private corporation, or of a partnership or association which is an adverse party, and interrogate him by leading questions and contradict and impeach him in all respects as if he had been called by the adverse party, *and the witness thus called may be contradicted and impeached by or on behalf of the adverse party only upon the subject matter of his examination in chief.* (emphasis added)

15. In 5 J. Wigmore, Evidence § 1368, at 33 (3d ed. 1940), the author states:

> [A] witness, on his direct examination, discloses but a part of the necessary facts. That which remains suppressed or undeveloped may be of two sorts, (a) the remaining and qualifying cir-

clude that such rulings were in the nature of nonprejudicial or harmless error. For the record does not indicate any reasons why the city of Kotzebue failed to call Frank Ferguson as its own witness as part of its case in chief, or in rebuttal. Since these options were available to the city of Kotzebue despite the court's scope of cross-examination rulings, we fail to discern any prejudice to the city attributable to these scope of cross-examination rulings.[16]

■ As its fifth specification of error, the city of Kotzebue's position is that the trial court erred in permitting counsel for Ipalook, during his final argument, "to comment on purported statements by Officer William Eisenhower, which statements were not in evidence."[17] It is a well established rule that counsel, in his argument to the jury, may not include statements which are unsupported by evidence, but that his arguments may include reasonable inferences or deductions from the evidence.[18] Although Eisenhower did not testify, there was testimony from other witnesses as to what he had said and done. What Ipalook's counsel said in final argument could be fairly characterized as reasonable inferences or deductions from such other testimony. But even if there were some question as to the propriety of what counsel was arguing, possible prejudice to

appellee was obviated by the court's admonition to the jury, made at the time appellee's counsel objected to the argument made by Ipalook's counsel, that if the jury found any basis in the evidence for support of such argument they could consider it, but if not, they may not consider such argument, and that the jury was the final arbiter of the evidence involved. We therefore hold that no error was committed by the trial judge in overruling the city's objections to this portion of counsel for Ipalook's final argument.

Appellant city of Kotzebue, in its last specification of error, states that, "The trial court erred in granting remittitur of only $10,000.00 and in entering an Amended Judgment of $15,000.00, based on said remittitur." We earlier indicated that the jury returned a verdict of $25,000 in Ipalook's favor, and that this verdict was remitted to $15,000 as a result of appellant's motion for a remittitur, or for a new trial on the issue of damages.

In ruling on appellant's motion for remittitur, the trial judge found that the jury's verdict was not the result of passion or prejudice. In making this decision, the trial judge stated:

I do not find that the jury made a decision in this case based on passion, bias

cumstances of the subject of testimony, as known to the witness, and (b) the facts which diminish the personal trustworthiness of the witness.
*See also* C. McCormick, Law of Evidence § 21 (1954). We believe that cross-examination should have been allowed in order to extract the remaining qualifying circumstances known to the witness but previously undisclosed by him, as well as to bring to light any facts which might diminish the personal trustworthiness or credit of the witness.

16. At oral argument before this court, counsel for the city of Kotzebue failed to offer any explanation as to why the witness Ferguson was not called by the city later in the case.

17. During the course of his argument, Ipalook's counsel attributed the following thoughts to Officer Eisenhower during Eisenhower's argument with Arthur

Fields, all of which preceded the shooting in question.

[Y]ou haven't got any right to argue with me * * * I'm a city policeman, I can stop this game any time I want, I got a badge on, that's my authority. That and this and I can pull it out and enforce it any time. You're not doing anything wrong but I can stop your game, I can make you do anything I want because I'm the boss here. I can even shoot somebody off hand who has nothing to do with my argument with you.

18. McLaney v. Turner, 267 Ala. 588, 104 So.2d 315, 321–322 (Ala.1958); Affett v. Milwaukee & Suburban Transp. Corp., 11 Wis.2d 604, 106 N.W.2d 274, 277, 86 A.L.R.2d 227 (Wis.1960). *See* Veal v. Newlin, Inc., 367 P.2d 155, 156 (Alaska 1961).

or prejudice * * *. I find that the jury award of $25,000.00 is excessive and unjust under the evidence and circumstances as presented to the Court and jury.

In the course of his oral decision in regard to the remittitur motion, the trial judge also found that "a verdict of $15,000 is the highest verdict and the largest amount which the evidence and testimony in this case will support." Also of significance is the following portion of the trial judge's oral decision where he said:

> The Court in its observations of the plaintiff as a witness in the case states that the witness was stoic. * * * By this I mean that he manifested indifference to pain and aches. He even minimized his injuries and certainly did not exaggerate. What testimony he gave with regard to his damages was literally dragged out of him. I do not think that he should be penalized for not speaking up or exaggerating his injuries.

In granting the remittitur, the trial judge referenced his authority to Civil Rule 59 (a). Civil Rule 59(a) provides in part that:

> A new trial may be granted to all or any of the parties and on all or part of the issues in an action in which there has been a trial by jury or in an action

tried without a jury, if required in the interest of justice.

█ Both under this rule of civil procedure and its federal counterpart, it is established that trial courts are empowered to deny a new trial on the condition that plaintiff accept a remittitur.[19] Although differences exist as to the criterion to be employed by the trial court in determining the proper amount of remittitur, the standard used by the trial court in the case at bar finds considerable judicial support.[20] In Hash v. Hogan,[21] we had occasion to point out that the trial court's authority to condition an order for new trial upon a remittitur is not absolute. We said:

> In regard to the use of remittiturs, it is established that "they are not proper where the verdict was the result of passion and prejudice, since such prejudice may have infected all the decisions of the jury."

█ Our study of the record has brought us to the conclusion that the trial court's finding that the $25,000 jury verdict was not the result of passion or prejudice is not clearly erroneous and therefore should remain undisturbed.[22] We are of the further view that the trial court did not abuse its discretion in determining that the proper amount of remittitur should be fixed at $10,000 instead of $23,500 as urged by appellant city of Kotzebue.[23]

19. Hash v. Hogan, 453 P.2d 468 (Alaska 1969) ; 3 W. Barron & A. Holtzoff, Federal Practice & Procedure § 1305.1, at 374–75 (1958).

20. The following authorities support the rule that the verdict should be reduced to the maximum amount which the trial court considers the jury should have awarded on the evidence: Curtis Publishing Co. v. Butts, 351 F.2d 702, 718–719 (5th Cir. 1965), aff'd, 388 U.S. 130, 87 S.Ct. 1975, 18 L.Ed.2d 1094 (1967) ; Boyle v. Bond, 88 U.S.App.D.C. 178, 187 F.2d 362, 363 (1951) ; Miller v. Boeing Co., 245 F.Supp. 178, 184 (D. Mont.1965) ; Rice v. Union Pac. R. R., 82 F.Supp. 1002, 1007 (D.Neb.1949). See also 3 W. Barron & A. Holtzoff, Federal Practice & Procedure § 1305.1,

at 376 (1958) ; 6A J. Moore, Federal Practice ¶ 59.05 [3], at 3743–45 (2d ed. 1966).

21. 453 P.2d 468, 473 (Alaska 1969) (footnote omitted).

22. "The trial court's determination as to whether the verdict is the result of passion or prejudice will not be disturbed on appeal, unless the determination is clearly erroneous." 6A J. Moore, Federal Practice ¶ 59.05 [3], at 3746 (2d ed. 1966) (footnote omitted).

23. In Hash v. Hogan, 453 P.2d 468, 471–472 (Alaska 1969), we had occasion to refer to the scope of appellate review pertaining to remittitur questions. In that case, we quoted from our prior opinion in Ahlstrom v. Cummings, 388 P.2d

Appellee Ipalook's recoverable damages fall exclusively within the category of pain and suffering.[24] In Beaulieu v. Elliott,[25] we said in regard to pain and suffering that:

> [T]here is no fixed measure of compensation in awarding damages for pain and suffering, and such an award necessarily rests in the good sense and deliberate judgment of the tribunal assigned by law to ascertain what is just compensation.

At the time he was shot by Officer Eisenhower, Ipalook was 26 years old. At trial, Ipalook testified that the wound was painful when inflicted, and that he could not walk on it for a week; that the wound healed over in four or five days but that his leg still aches occasionally;[26] that in cold weather his leg tightens up; and that he favors the leg which was wounded by Officer Eisenhower.[27]

In light of the foregoing evidence as to pain and suffering and the trial court's characterization of Ipalook as a stoic who manifested an indifference to pain and tendency to underplay his injuries, we cannot find that the trial court abused its discretion in granting a remittitur of $10,000 instead of the greater remittitur which was contended for by appellant city of Kotzebue.

261, 262 (Alaska 1964) (footnote omitted), where we said:

> The matter of granting or refusing a new trial rests in the sound discretion of the trial judge. We shall not interfere with the exercise of his discretion except in the most exceptional circumstances and to prevent a miscarriage of justice.

In *Hash* we also quoted from our previous decision in National Bank of Alaska v. McHugh, 416 P.2d 239, 244 (Alaska 1966). In *McHugh*, we said:

> We have held that the granting or refusing of a request for a new trial is discretionary with the trial judge. We do not interfere in the exercise of that discretion except in the most exceptional circumstances and to prevent a miscarriage of justice. *In order for us to hold that the trial judge has abused his discretion, we would have to be left with the definite and firm conviction on the whole record that the judge made a mistake in refusing to order a remittitur or grant a new trial in re-*

> *sponse to appellant's motion.* (emphasis added) (footnotes omitted)

24. Although appellee Ipalook originally sued for both compensatory and punitive damages, this latter claim was inexplicably abandoned prior to trial.

25. 434 P.2d 665, 676 (Alaska 1967).

26. Note the trial occurred some two years after the shooting took place. Appellee's residual scars from the gunshot wound were shown to the jury. In the trial judge's words, the jury saw the following:

> Where the scars were located there is a roughness and discoloration of the skin. The scar where the bullet entered was approximately the size of a dime and the scar where the bullet came out was the approximate size of a nickel.

27. No evidence was adduced which would support any recovery for loss against earnings, impairment of future earning capacity, or past or future medical expenses.