Hortensia C. DRICKERSEN, Appellant,

v.

Charles G. DRICKERSEN, as guardian and next friend of Pandora M. Drickersen, Appellee.

No. 4133.

Supreme Court of Alaska.

Dec. 21, 1979.

Kenneth P. Jacobus, Hughes, Thorsness, Gantz, Powell & Brundin, Anchorage, for appellant.

James A. Parrish, Fairbanks, for appellee.

Before RABINOWITZ, Chief Justice, CONNOR, BOOCHEVER and BURKE, Justices, and DIMOND, Senior Justice.

## OPINION

BURKE, Justice.

This appeal arises out of an action for personal injuries.[1]

On August 28, 1971, Pandora M. Drickersen was seriously injured while riding as a passenger in a vehicle being operated by her mother, Hortensia C. Drickersen. Pandora's father, Charles G. Drickersen, filed an action on her behalf against Mrs. Drickersen, alleging that she had operated her vehicle in a negligent manner and that such negligence was a proximate cause of the accident and injuries suffered by Pandora. After trial in superior court, the jury returned a verdict in favor of Pandora. Her damages were assessed at $1,034,286.03. On June 24, 1978, judgment was entered for that amount, plus prejudgment interest in the amount of $552,998.24, attorney's fees in the amount of $147,000.00, and costs in the amount of $4,643.24, for a total judgment of $1,738,927.51. Alleging numerous procedural errors in the trial of the case and error in the superior court's determination of the amount of prejudgment interest due, Mrs. Drickersen now appeals from that judgment.

### I

■ Appellant's first claim of error is that "pervasive and continued" references to the subject of insurance during selection of the jury entitled her to the granting of a mistrial. Before permitting counsel to question the prospective jurors, the superior court inquired of the panel:

Is there anything about this type of an action where a person brings . . . a lawsuit to recover money damages for personal injury based on negligence . . that would make you feel you have any preconceived notion or idea as to the outcome of the case or that you could not be fair to either party?

In response to the court's inquiry, one prospective juror, Mrs. Burnett, stated, "I don't like any part of any of this. I've always felt very prejudiced about something—it's what makes our insurance so darn high." When asked whether her feeling might cause her to lean in favor of the defendant, Mrs. Burnett said, "It might." She further stated that she didn't know if she could put her own prejudice aside in deciding the case. Thereupon, Mrs. Burnett was excused for cause. *See* Rule 47(c)(2)–(4), Alaska R.Civ.P.[2]

Without immediate objection, Pandora's attorney subsequently asked several other members of the panel whether they had any prejudice similar to that expressed by Mrs. Burnett, whether they had any interest in any insurance companies, and whether they would be prejudiced by the fact that the lawsuit was between members of the same family. As a result of these questions, appellant argues: "By the time the voir dire examination was completed, it was obvious to all jurors that liability insurance was involved in the case."

Assuming, *arguendo*, that appellant is correct, we hold that there was no error. Pandora's attorney was certainly entitled to ascertain whether any of the prospective jurors held views similar to those expressed

---

1. On petition for review, this case was before us once before. The issues decided at that time are unrelated to those raised by the present appeal. *See Drickersen v. Drickersen*, 546 P.2d 162 (Alaska 1976).

2. Civil Rule 47 provides in part:

    (c) *Challenges for Cause.* After the examination of prospective jurors is completed and before any juror is sworn, the parties may challenge any juror for cause. A juror challenged for cause may be directed to answer every question pertinent to the inquiry. Every challenge for cause shall be determined

by the court. The following are grounds for challenge for cause:

. . . . .

    (2) That the person is biased for or against a party or attorney.
    (3) That the person shows a state of mind which will prevent him from rendering a just verdict, or has formed a positive opinion on the facts of the case or as to what the outcome should be, and cannot disregard such opinion and try the issue impartially.
    (4) That the person has opinions or conscientious scruples which would improperly influence his verdict.

by Mrs. Burnett, in order to determine whether he had grounds to challenge them for cause. For the same reason, Pandora's attorney was entitled to ascertain, by good faith questioning, whether any prospective juror had an interest in, or connections with, any insurance company. *City of Kotzebue v. Ipalook*, 462 P.2d 75, 76–77 (Alaska 1969). Likewise, we think that there was a real danger that some of the prospective jurors might have been improperly prejudiced by the fact that the lawsuit was one brought by a husband against his wife, on behalf of their own child. Such prejudice would have entitled Pandora's attorney to have the prospective juror excused for cause. *See* Rule 47(c)(2)–(4), Alaska R.Civ.P.

Under the circumstances we cannot say that counsel's questions were asked in bad faith. *See City of Kotzebue v. Ipalook*, 462 P.2d at 76–77. Accordingly we hold that appellant's motion for a mistrial was properly denied.

Our distinguished colleague, Senior Justice Dimond, would hold that the presence or absence of liability insurance should be made known to the jury, at least in cases such as this, where the suit is between a child and its parent. The position that he so ably advocates is not one that has been urged by appellee. Nor is the question one that we must decide in order to resolve the issues presented by this appeal. Thus, we are not required to re-examine our past decisions on the subject and elect nor to do so at this time.

## II

Appellant's next contention is that the superior court erred in refusing to give the following instruction to the jury:

No insurance company is a party to this action. You must refrain from any inference, speculation, or discussion about insurance.

Any questions that were asked in the examination of prospective jurors about an interest in a casualty insurance company were for the sole purpose of discovering the possibility of a biased viewpoint.

This particular proposed instruction was not specifically addressed by appellant's counsel when the court heard objections to the instructions. Counsel made only a general objection, stating: "I've submitted a proposed copy of the instructions and—and I wanted all of 'em given. And if the court didn't give them, why I assume there's an exception." The court replied, "Well, I think so too."

■ Civil Rule 51(a) provides in part: "No party may assign as error the giving or the failure to give an instruction unless he objects thereto before the jury retires to consider its verdict, *stating distinctly the matter to which he objects and the grounds of his objection.*" Rule 51(a), Alaska R.Civ.P. (emphasis added). Appellee argues that, because appellant failed to comply with the requirements of Rule 51(a), she is now precluded from arguing that the superior court erred in refusing to give her proposed instruction. *See Brown v. Estate of Jonz*, 591 P.2d 532 (Alaska 1979). Given the statement of the trial judge, that he agreed with appellant's counsel that an objection had been made, we think this issue is controlled by our holdings in *City of Nome v. Ailak*, 570 P.2d 162, 166 (Alaska 1977), and *Breitkreutz v. Baker*, 514 P.2d 17, 24 (Alaska 1973), where strict compliance with Rule 51(a) was not required.[3] *See also* Rule 46, Alaska R.App.P.

---

**3.** Despite this holding, we urge the trial bench and bar to adhere to the requirements of Civil Rule 51(a).

The purpose of this rule is to enable the trial judge to avoid error by affording him an opportunity to correct his charge before it goes to the jury. The dictates of the rule are satisfied only if the judge is clearly made aware of the alleged error in or omission from the instructions. Counsel's objections

must be specific enough to clearly bring into focus the precise nature of the asserted error. *Saxton v. Harris*, 395 P.2d 71, 73 (Alaska 1964) (footnote omitted). Compliance with the rule will avoid unnecessary error and, in many cases, the expense of an appeal and possible retrial. Here, for example, if it were not for the superior court's volunteered statement that it agreed that a sufficient objection had been made, we would be inclined to hold that appel-

██ At the hearing on appellant's motion for judgment notwithstanding the verdict the superior court explained its refusal to give the requested instruction. After noting that counsel's questions to the prospective jurors about insurance were, in its judgment, legitimate and largely in response to Mrs. Burnett's confession of prejudice due to concern over her own insurance rates, the court commented:

> [T]here wasn't any evidence one way or the other. I'm not going to assume there's insurance or not insurance. I still don't know whether there's any insurance. And to be given an instruction like that, it's a negative instruction for one thing, but there's no evidence to cover that. And no inference—it might be completely false, I don't know whether there's insurance or not. But it had nothing to do with any of the issues in the case, and I don't think the question of insurance was improperly raised in the first place.

Based on our review of the entire record, we are unable to say that the court abused its discretion in refusing to give appellant's proposed instruction.

### III

██ Appellant next contends that she was impermissibly barred from testifying in her own defense. This contention is based upon a ruling by the trial court sustaining an objection to one of the questions asked her by her own attorney. The specific question as to which the objection was sustained was, "Where was your Oldsmobile stationwagon in relation to the jeep at the time that you first—first observed the truck turning or first perceived danger?" Stating that "this has been testified to before," the court "sustain[ed] the objection on the basis of [Civil] Rule 43(i)." [4] Assuming, *arguendo*, that the court erred in ruling as it did, we conclude that such error was harmless. [5] Such being the case, the ruling would not be a ground for reversal even if it were erroneous. Rule 61, Alaska R.Civ.P. [6]

---

lant is not entitled to review of the alleged error. *See id.; Brown v. Estate of Jonz*, 591 P.2d 532 (Alaska 1979). However, such assurances by the trial courts should not be taken as guaranteeing that we will grant relief from strict compliance with the rule in future cases. The danger in failing to comply with the rule, not only to the parties but to the non-complying attorney as well, should be obvious.

4. Civil Rule 43(i)(1) provides:
   *(1) Control of Interrogation—Exclusion of Further Evidence.* The court shall exercise a reasonable control over the mode of interrogation, so as to make it as rapid, as distinct, as little annoying to the witness, and as effective for the extraction of truth as possible. The court may stop the production of further evidence, upon any particular point, when the evidence upon it is already so full as to preclude reasonable doubt. Subject to the above, the parties may put such legal and pertinent questions as they see fit.

5. Mrs. Drickersen was previously called as an adverse witness, during the presentation of Pandora's case-in-chief. At that time she was questioned in great detail, by both counsel, concerning the events surrounding the accident. Those questions required her, among other things, to describe the speed and relative positions of the vehicles involved, whether she observed any turn signals on the vehicles ahead of her, whether the view of the vehicles ahead

of her was obstructed as she pulled out to pass, and *where she was when she first noticed the lead truck start to turn.* While the evidence on the particular point may not have been "so full as to preclude reasonable doubt," so as to justify the court's ruling under Civil Rule 43(i)(1), the matter was certainly thoroughly covered, to the extent that we are satisfied that the court's ruling had no substantial influence on the jury's verdict. Thus, we conclude that the error, if any, was harmless. *Love v. State*, 457 P.2d 622, 630–31 (Alaska 1969).

We do, however, emphasize the fact that unless the evidence on a particular point "is already so full as to preclude reasonable doubt," Civil Rule 43(i)(1) entitles the parties to "put such legal and pertinent questions as they see fit." *See* note 4 *supra.* This means that in most cases the trial court should not prevent a party from being examined by his own attorney pertaining to any relevant fact, even though the same subject may have been previously covered by opposing counsel calling the party as an adverse witness.

6. Civil Rule 61 provides:
   No error in either the admission or the exclusion of evidence and no error or defect in any ruling or order or in anything done or omitted by the court or by any of the parties is ground for granting a new trial or for setting aside a verdict or for vacating, modifying or otherwise disturbing a judgment or

## IV

■ Appellant's next claim of error concerns the trial court's exclusion of expert testimony offered on her behalf and its refusal to strike other expert testimony introduced by the opposition. The excluded evidence consisted of opinion testimony that had not been disclosed to Pandora's attorney until offered at trial. From our review of the record, we are unable to say that the trial court abused its discretion in ruling as it did. *Bachner v. Pearson*, 432 P.2d 525 (Alaska 1967).[7]

## V

■ Appellant's final contention is that the superior court erred in making its award for prejudgment interest. The accident took place on August 28, 1971. The court awarded prejudgment interest from that date to the date of judgment, June 24, 1978, at a rate of eight percent per annum.

Pandora was entitled to recover interest on the judgment from the date of the accident, when her cause of action arose. *Beech Aircraft Corp. v. Harvey*, 558 P.2d

879, 888 (Alaska 1976); *State v. Phillips*, 470 P.2d 266, 274 (Alaska 1970). As to that there is no dispute. The only question is whether the court erred in calculating such interest at an annual rate of eight percent.

Prior to September 12, 1976, AS 45.45.-010(a) authorized interest of only six per cent per annum. § 25–1–1, ACLA 1949. Effective that date, AS 45.45.010(a) was amended to provide for a rate of eight percent. Ch. 159, § 1, SLA 1976. We hold, accordingly, that for the period prior to the effective date of that amendment, Pandora was entitled to recover interest on the judgment at the rate of only six percent per annum and that the court's award of interest for that period was therefore excessive. For the period thereafter until entry of the judgment, the court's award was correctly calculated at the rate of eight percent.[8] *See City & Borough of Juneau v. Commercial Union Insurance Co.*, 598 P.2d 957 (Alaska 1979).

As to this item, the judgment is reversed. Upon remand the superior court shall enter an amended judgment reducing the amount

order, unless refusal to take such action appears to the court inconsistent with substantial justice. The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties.

7. Prior to trial, the court entered an order requiring the parties to list those witnesses they intended to call. The order further provided:

On a separate sheet attached to the Witness List, counsel shall file a disclosure statement as to each witness. The statement shall disclose the testimony of the witness which counsel expects to elicit at trial. It shall be specific and not general, the purpose being to avoid surprise and delay at trial, and to give opposing counsel an adequate basis for determining whether to take the witness' deposition.

Among the witnesses eventually listed by appellant was Dr. John Habberstad, an accident reconstruction expert. This witness was deposed by Pandora's attorney on March 10, 1978, but at that time he had reached only certain "preliminary conclusions" which he described as "very rough" and subject to change upon further study of the accident. The opinions which were objected to at trial, and excluded by the court, were not disclosed until the time they were offered.

"A party [who has responded to a request for discovery] is under a duty seasonably to supplement his response with respect to any question directly addressed to . . . the subject matter on which [an expert witness] is expected to testify, and the substance of his testimony." Rule 26(e)(1), Alaska R.Civ.P. If a party fails to obey an order to provide or permit discovery, the court may enter an order prohibiting him from introducing designated matters into evidence. Rule 37(b)(2)(B), Alaska R.Civ.P.

8. Appellant argues that, since Pandora's right to interest on the judgment attached on the date of the accident, the six percent rate then in effect should control later accruals, despite the amendment to AS 45.45.010(a). In *State v. Phillips*, 470 P.2d 266, 274 (Alaska 1970), we observed that there is a major policy consideration behind the decision to award prejudgment interest: "[F]ailure to award prejudgment interest creates a substantial financial incentive for defendants to litigate even where liability is so clear and the jury award so predictable that they should settle." Appellant's argument ignores this important policy. Accordingly, we reject it.

of its award for prejudgment interest accruing between the date of the accident and September 12, 1976. In all other respects, the judgment is AFFIRMED.

DIMOND, Senior Justice, concurring.

This court has committed itself to the proposition that, subject to exceptions not relevant here, evidence of insurance is precluded in negligence cases—the reason for the rule being either irrelevance or undue prejudice.[1] At the same time, the court permits "good faith" questioning whether any prospective juror has an interest in, or connections with, any insurance company.[2]

It seems doubtful, or at least debatable, whether the rule precluding the evidence of insurance in negligence cases any longer has much to recommend its retention. The fact that we permit counsel to question jurors about their possible interest in or connection with any liability insurance company becomes little more than an adroit method by plaintiff's attorneys to convey to the jury the idea that insurance is involved

in the case.[3] Furthermore, the almost universal enactment of motor vehicle financial responsibility laws in the states of our nation, as is the case in Alaska,[4] and the fact that most automobile drivers, including jurors, probably have liability insurance coverage on their vehicles, will tend to cause a jury to believe that if a defendant is worth suing as a result of an automobile accident, he or she is probably covered by a policy of liability insurance.[5] See W. Prosser, The Law of Torts § 83, at 549 (4th ed. 1971); C. McCormick, Law of Evidence § 201 at 481 (2d ed. 1972). See also 2 J. Wigmore, Evidence § 282(a) (3rd ed. 1940).[6]

The reason for not revealing the fact of insurance is to prevent the possibility of the jury being influenced by the fact that such a defendant has a "deep pocket." When contrasted with an injured individual, jurors may well be inclined to award a more generous verdict if they believe the defendant is well able to pay the sum without incurring deprivation. This human consideration, however, is present whenever an injured individual sues a large corporation.

1. *Poulin v. Zartman*, 542 P.2d 251, 266 (Alaska 1975), *opinion on rehearing*, 548 P.2d 1299, 1300 (Alaska 1976). *See* Rule 411, Alaska R.Evid.

2. *See* part I of the majority opinion in this case, and also *City of Kotzebue v. Ipalook*, 462 P.2d 75, 76–77 (Alaska 1969).

3. *See* W. Prosser, The Law of Torts § 83, at 549 (4th ed. 1971).

4. The Alaska Motor Vehicle Safety Responsibility Act, AS 28.20.010–.640, states in its declaration of purpose:

> *Declaration of purpose.* The legislature is concerned over the rising toll of motor vehicles accidents and the suffering and loss inflicted by them. The legislature determines that it is a matter of grave concern that motorists be financially responsible for their negligent acts so that innocent victims of motor vehicle accidents may be recompensed for the injury and financial loss inflicted upon them. The legislature finds and declares that the public interest can best be served by the requirements that the operator of a motor vehicle involved in an accident respond for damages and show proof of financial ability to respond for damages in future accidents as a prerequisite to his exercise of the privilege of operating a motor vehicle in the state.

5. If jurors will almost inevitably assume that a defendant in a motor vehicle accident has liability insurance, and an inference that insurance is available is raised by the opposing party, then elemental fairness would dictate that a defendant who has no insurance be allowed to show that fact. *See* C. McCormick, Law of Evidence § 201 at 482 (2d ed. 1972).

6. Probably the leading exponent of the view that revelation of insurance is permissible was taken by the Florida Supreme Court in *Stecher v. Pomeroy*, 253 So.2d 421 (Fla.1971). That case stands for the proposition that revealing the existence of an insurer as a real party in interest justifiably reflects the true fact that there is financial responsibility. However, the Florida legislature in 1976 passed Fla.Stat. 627.7262, which specifically provided that no motor vehicle liability insurer be joined as a party defendant in an action to determine the insured's liability. A year later, this statute was extended to liability insurance carriers generally. *See* Fla.Stat. 768.045.

On the other hand, Louisiana has a statute which allows the injured party the right of direct action against the insurer within the terms and limits of the policy. Such action may be brought against the insurer alone, or against both the insured and the insurer jointly. *See* La.Rev.Stat.Ann. 22:655.

When, as here, the one which handles the defense of the litigation and will be eventually responsible for paying the judgment is an insurance company, there would appear to be no more reason for attempting to hide that fact from the jury than in a case where General Motors Corporation is the defendant. Merely for the purpose of being candid with the jury, the charade that insurance is not involved should be discontinued in this type of litigation.

What I have said above has particular application to a suit like the one at hand, where a child, represented by her father, has brought an action for damages against her mother. Eliminating the factor of insurance for the moment, it seems to me that it would be incomprehensible to a jury to see the courts permitting such actions, which would seem to have the inevitable effect of irreparably destroying family harmony and domestic peace and tranquility. But if there is insurance involved, then that problem is of little or no consequence.

In *Hebel v. Hebel*,[7] we held that an unemancipated minor has a right of action against her mother for personal injuries allegedly sustained as a result of the parent's negligent driving. And we stated further that

> although the existence of liability insurance does not create liability its presence is of considerable significance here. To persist in adherence to family-harmony and parental-discipline-and-control arguments when there is automobile insurance involved is in our view unrealistic. If there is insurance there is small possibility that parental discipline will be undermined, or that the peace of the family will be shattered by allowance of the action.[8]

Jurors on the whole are intelligent persons. They are aware of the widespread existence of requirements of automobile liability insurance. When they see the courts permitting a minor to sue his parents for large sums of money for negligence arising out of an automobile accident, I submit they assume that liability insurance is involved, for the chances of such a suit absent liability insurance would be indeed remote. And the point made by plaintiff's attorney, in being permitted to ascertain whether any prospective juror has an interest in or connection with an insurance company, is not lost on the jury. If they still remain unconvinced that liability insurance would be used to pay damages for the benefit of the injured child, it is unlikely that they will assess damages to the child's mother in excess of one million dollars, as the jury did in this case. The real defendant in such a case, the jury must assume, is the insurance company and not the mother.[9]

As a practical matter, that is essentially what such an action is all about. In a suit against the mother brought by a child, the insurance company is a real party in interest. I submit that this fact should be honestly faced and that the presence or absence of liability insurance should be divulged to the jury in cases such as this one. It is time to remove from the law the fiction that a child suing her mother for vast sums of money really intends to burden her mother with a resulting judgment, and to collect on the judgment from whatever assets the mother might have.

To the extent that this separate opinion does not conflict with any portion of the majority opinion, I concur in the latter and agree that the judgment should be affirmed.

---

7. 435 P.2d 8 (Alaska 1968).

8. *Hebel v. Hebel*, 435 P.2d 8, 15 (Alaska 1968) (footnote omitted).

9. The defendant should be entitled to an instruction indicating that the fact of insurance has been revealed so that the jury may be aware of the real parties in interest in the litigation. In addition, the jury should be further instructed that the fact of insurance should not enter their deliberations, as far as the determination of liability is concerned, since insurance is irrelevant to that issue.