COMMONWEALTH of Kentucky, DEPART-
MENT OF HIGHWAYS, Appellant,

v.

Mae Arnett Preston THORNBURY et al.,
Appellees.

Court of Appeals of Kentucky.

Feb. 25, 1966.

Robert Matthews, Atty. Gen., William A. Lamkin, Jr., Asst. Atty. Gen., Foster J. Collis, Jackson, for appellant.

George Chad Perry, III, Paintsville, Marcus Mann, Salyersville, for appellees.

PALMORE, Judge.

The Commonwealth appeals from an award of $3000 for the condemnation of 1.54 acres of the appellee Mae Thornbury's land.

Three valuation witnesses appeared for the landowner. The testimony of one was stricken, and the Commonwealth contends (1) that the evidence of the other two also should have been stricken and (2) that a mistrial should have been declared when one of the landowner's witnesses suggested the existence of an oil and gas lease on the property in question, the lessee not being a party to the proceeding.

The witness J. C. May admitted that he had not made a paper calculation of the amount of acreage taken. However, he was familiar with the manner in which right-of-way stakes are set, and he had stepped off the area while the stakes set by the highway department were in place. He estimated it as about 1¾ acres and figured the landowner would lose another acre or so for an access road leading across a 5-acre field of bottom land to the point at which the department's plans called for a new entrance to the highway. It was May's opinion that the property had a market value of $7,500 before the taking and $4,000 afterward, or a difference of $3,500. When specifically asked to assume the correct area as 1.54 acres, he testified as before, again explaining that the net effect of the project would be to reduce the tillable bottom land by 2½ to 3 acres.

It is our opinion that the trial court was correct in refusing to strike May's testimony. That his horseback estimate of 1¾ acres differed from the state engineer's calculation by .21 of an acre certainly did not destroy its probative value. Its having been imprecisely figured was a circumstance affecting the weight and credibility to be accorded his evidence by the jury. Indeed, it seems to us that he made a creditable calculation at that. Moreover, whatever may have been the technical imperfections of his evidence (and assuming also that the engineer's calculations were infallible), they were cured when he was asked to and did testify on the basis of the correct figure. Commonwealth, Dept. of Highways v. Mayes, Ky., 388 S.W.2d 125 (1965).

All of the valuation witnesses, both for the state and for the landowners, gave "before" values within a range from $7,500 to $8,000, except for the landowner's witness Arnold Rice. Rice testified that the property had a value of $30,000 before the taking and $10,000 afterward, a difference of $20,000. This extravagant estimate resulted from the property's having been leased for oil and gas. When asked on cross-examination whether the bottom land which was the focal point of the controversy was still under lease at the present time, he replied as follows:

A. "I think so."

Q. "Do you know who has it?"

A. "Yes, sir."

Q. "Who has a lease on it?"

A. "Star Petroleum Company."

At this juncture the Commonwealth moved for a discharge of the jury and a continuance on the ground that the alleged lessee was not before the court. The motion was overruled, and the landowner took the witness stand in rebuttal. She said that the 8-acre portion of her land that embraces the strip taken in this case had been under lease several times but was not leased at present, and that at one time there were three pump-

ing wells on it but they had not been pumped in over a year.

 With respect to the motion to discharge the jury and continue the case, it would seem that any real question as to whether the land was under a subsisting lease could have been resolved quickly and with very little effort, without requiring more than a brief recess. Be that as it may, the onus of seeing that the right parties are before the court is on the condemnor, who institutes the proceeding in the first place. Nichols, Eminent Domain, § 26.1132 (Vol. 6, p. 197). Failure to join the claimant or owner of an interest that can be separately taken and evaluated does not affect a proceeding against the other owners. Cf. Nichols, Eminent Domain, § 26.1134 (Vol. 6, pp. 208, 209). This is the chief practical distinction between the two schools of thought on the nature of the title acquired by a condemnation proceeding. Nichols, Eminent Domain, § 1.142 (Vol. 1, p. 42). The theory in this jurisdiction is that the title is derivative, embracing only the interests of those who are made parties. Cumberland River Oil Company v. Commonwealth, Ky., 350 S.W.2d 700, 702 (1961). It follows that if someone who has not been made a party has an interest the condemnor desires to acquire, and if it is too late to bring him before the court by amendment, a separate action against him is necessary. Whether Star Petroleum Company (if in fact it had a subsisting lease on the property) could have been made a party at this late stage of the proceedings is, however, unnecessary to decide. At least we can say that the trial court's refusal to discharge the jury and continue the case for purpose of another trial certainly was not an abuse of discretion.

 On the remaining argument, which is that the whole of Rice's testimony should have been striken, we agree that his fantastic estimates were founded on invalid factors and thus were incompetent. Nevertheless, it seems obvious from the amount of the verdict that the jury disregarded the Rice testimony, and for that reason the likelihood of prejudicial effect is too remote to justify a reversal.

The judgment is affirmed.