**COMMONWEALTH of Kentucky, DEPART-MENT OF HIGHWAYS, Appellant,**

**v.**

**C. C. SWIFT et al., Appellees.**

Court of Appeals of Kentucky.

June 24, 1966.

Robert Matthews, Atty. Gen., Wm. A. Lamkin, Jr., Asst. Atty. Gen., Frankfort, Reed D. Anderson, Madisonville, for appellant.

B. C. Green (Green & Connor), D. C. Brodie, Owensboro, for appellees.

MILLIKEN, Judge.

This appeal is a sequel to Commonwealth of Kentucky, Department of Highways v. Swift (1963), Ky., 375 S.W.2d 691, where we reversed a $12,075 judgment rendered for the property owners because the jury was informed of the $10,300 recommendation by the commissioners in the County Court for the taking of the same property. In the second trial judgment was entered on a verdict for $13,020 which is the judgment now appealed. This time the Department claims that the witnesses for the landowners based their estimates of damage upon irrelevant measures of value.

The land taken was rectangular in shape, extending along the whole 210-foot frontage of the property along Highway 431 and extending back 31 feet in width. The right of way was moved to within 11 feet of the home and the highway was elevated over 3 feet above the yard, and the drainage ditch was deepened, widened and moved about 26 feet closer to the house than the old ditch. The photographs filed as exhibits suggest how uncomfortably close the widened highway will be to the home.

The first trial was held before our decision in Commonwealth of Kentucky, Department of Highways v. Sherrod (1963), Ky., 367 S.W.2d 844, which substantially changed the practice in highway condemnation cases. The second trial, resulting in the judgment now appealed, was after Sherrod and the sole question on this appeal is whether the evidence offered to support the landowners' values conformed to the principles laid down therein, for the verdict was rendered in the form Sherrod prescribed for it.

There is no question that the appraisal witnesses for the landowners were qualified by training or experience, and they scrupulously adhered to the Sherrod format of giving their opinions of the fair market value of the property before the taking and after the taking. The witnesses for the Department and those for the landowners agreed substantially on the before-value—the average before-value of the condemnees' witnesses was $46,750, and that of the Department was $45,562.50. It was in the after-value where the difference between the Department and the condemnees was focused—for the condemnees the average after-value was $31,250, and for the Department it was $39,233, making a difference of $7,983 in estimates of after-values.

■ On cross-examination of the condemnees' appraisal witnesses the Department elicited answers which, taken alone, violated the principles laid down in Sherrod, but when taken in context with the rest of the testimony were merely checks on

the justness of the evaluations reached. On direct examination condemnees' appraisal witnesses testified as to the market values (before and after the condemnation) from comparable sales, from viewing the property, and from sales and purchases they themselves had made in the community. Even the Department's appraisal witness opined that the factor which most affected the after-value of the property was the "proximity damage" of the deepened ditch, moved so near to the home. One witness referred to it not as a ditch, but as a "borrow pit," which is a ditch or excavation dug for the purpose of leveling a highway or raising its grade by using the excavated dirt for that purpose. This is the factor, admittedly, which made the witnesses for the condemnees ascribe their larger effect of the highway project on the market value of the farm. They thought that the added nearness of the new highway roughly reduced the market value of the farm itself by a third. We do not find any value placed on the house as a separate item apart from the land itself; its value was merged in the market values declared for the property as a whole, both before and after the taking. The value the home added to the value of the land is, of course, an obviously proper factor to be considered in estimating market value of the whole. Commonwealth of Kentucky, Department of Highways v. Stamper, Ky., 345 S.W.2d 640.

As we see the testimony given here by the condemnees, it conforms to the format of Sherrod, and the consideration of the testimony of these witnesses on cross-examination leads us to believe that the items they considered in reaching their conclusions as to market value were more their checks on the justness of their conclusions than they were factors in reaching their conclusions as to market value. In fact, one of the condemnees' witnesses said as much. As heretofore pointed out, the before-values placed on this property by the litigants are substantially the same, and the difference between them comes in their respective estimates of the after-values. The condemnees' witnesses thought the market value was reduced about a third, while the Department thought the reduction was only about one-sixth. Under proper instructions and a form of verdict conforming to Sherrod, the jury found an after-market value somewhere in between the estimates. We conclude that the jury was not misled, nor prejudiced by anything said.

The judgment is affirmed.

MONTGOMERY and WILLIAMS, JJ., dissenting.