**ALASKA STATE HOUSING AUTHORITY,**
Appellant,

v.

**Irene DuPONT, Appellee.**

No. 785.

Supreme Court of Alaska.

April 5, 1968.

William J. Bailey, Anchorage, for appellant.

Charles E. Tulin, Anchorage, for appellee.

Before: NESBETT, C. J., and DIMOND and RABINOWITZ, JJ.

## OPINION

RABINOWITZ, Justice.

In a superior court condemnation proceeding appellee received a jury verdict in the amount of $40,000 as just compensation.[1] Appellant Alaska State Housing

---

1. The judgment which was entered upon this verdict awarded appellee $40,000 plus $1,812.50 in attorney's fees.

   This eminent domain proceeding was commenced by the Authority's filing of a declaration of taking, and $30,250 was deposited in the registry of the superior court as estimated compensation. Thereafter, the parties stipulated for the appointment of a master, who, after a full

Authority asks that the superior court's judgment upon this verdict be set aside and a new trial be ordered because of certain evidentiary rulings the trial court made in regard to the testimony of two of appellee's expert witnesses.

Appellant's first grouping of specifications of error relates to the testimony given by William Poe. It is argued that prejudicial error was committed by the trial court in overruling appellant's motion ·to strike, and objections to, Poe's testimony concerning a purported comparable sale.

This witness began his testimony by stating that in determining the value of appellee's lot and building he used both the market ·data approach and the approach of reproduction cost less depreciation.[2] As a basis for his market data evaluation, the witness related that he had used the sales of four comparable properties. The comparable sale in question involved land and improvements located adjacent to appellee's property. The dimensions of this adjacent lot ·were the same as those of appellee's parcel. In addition, a building was situated on this property which was used for both residential and commercial purposes. On January 2, 1964, prior to the conversion

of this comparable property to a commercial use, it was sold to a Mrs. Cease for $32,000.[3] On August 10, 1965, Mrs. Cease sold this property to appellant Authority for $32,500.[4]

At the point where this later sale to the Authority was related to the jury, the Authority's counsel made the following objection:

[T]he witness is using a purchase by the Housing Authority for the project. I * * * have no objection to the use of these sales if they're all used, all sales in this area.[5]

The trial court was of the opinion that evidence of the sale by Mrs. Cease to the Authority was admissible and overruled the Authority's objection. During cross-examination Poe testified that he thought Mrs. Cease was underpaid by the Authority for the property in question.[6] Counsel for the Authority then moved to strike Poe's testimony concerning Mrs. Cease's sale to the Authority. The trial court was of the opinion that although the possibility of coercion would ordinarily render the sale inadmissible, in this. instance it was competent since the party on behalf of whom the offer was made was the condemnee.[7]

---

hearing concluded that $37,500 should be awarded as just compensation. Pursuant to Civ.R. 72(h) (4) and (5), both parties appealed the master's determination. The de novo trial which was subsequently held resulted in the $40,000 verdict now questioned by the Authority.

2. The property owned by appellee consisted of a 50 foot by 140 foot corner lot located at Third Avenue and "A" Street in Anchorage. On this lot was a wooden frame house, approximately 20 years old which was 1,000 square feet in area. Appellee had reconverted a portion of the residential property into a beauty salon.

3. The witness Poe used this sale to Cease as his first of four purported comparables. It is Cease's subsequent sale of the same property to the Authority that is in question. The only witness offered by appellant used the Cease ·sale to the Authority in arriving at his determination of value.

4. The date of taking· of appellee's property for valuation purposes was July 9, 1965.

5. In response to the Authority's objection, counsel for appellee said:
[T]his is our witness and we have a comparable sale next door * * * the Alaska State Housing Authority purchased the property short of litigation. I think that we can use what we desire to use. Mr. Bailey wants to use others, he can do that.

6. This testimony was elicited in response to a question which sought the witness' explanation of the $500 increase in the sale price of the Cease property. In Poe's opinion, the property would have brought more on the open market.

7. The trial judge stated:
Well * * * this sale to the Housing Authority was * * * condemnation imminent or started as in the nature· of a forced sale and * * * ordinarily wouldn't be comparable, but * * * the plaintiff may bring it up if he so desires.

The Authority contends that evidence of the Cease sale was inadmissible since the Authority was the condemnor in the proceedings below.[8]

Resolution of this question is governed by our holdng in Bridges v. Alaska Housing Authority.[9] That case involved a suit by the property owner against the Alaska Housing Authority for damages flowing from wrongful destruction and taking of her property.[10] We held that:

> This comparative sales or market data approach may be a generally acceptable method of ascertaining value. But it is not appropriate in a case like this where the data used for comparison consists of amounts paid by a corporation possessed of the power of eminent domain for land subject to condemnation. A concept of fair market value presupposes a voluntary sale in the open market * * *. When sales are made to a corporation which will exercise its power of condemnation if it cannot acquire the property at a satisfactory price, it can hardly be said that the sales took place in the open market or that they were in the true sense voluntary and made by a

willing seller. We hold that evidence of prices paid by the Authority for the property in the urban renewal area was not a fair test of the value of appellant's buildings.[11]

We further pointed out in our opinion in Bridges that:

> Even in eminent domain proceedings the weight of authority clearly is that evidence of the price paid by the same or another condemning agency for other land that, although subject to condemnation, was sold by the owner without the intervention of eminent domain proceedings, is inadmissible to show the value of the land sought to be condemned.[12]

We adhere to the position taken in Bridges and hold that evidence of sales to the same or another condemning agency is inadmissible to prove the value of the property in condemnation proceedings regardless of whether such evidence is offered by the condemnor or the condemnee. It is the absence of voluntariness which disqualifies evidence of such sales from use in ascertaining market value.[13] We, therefore, conclude that it was error for the trial court to have permitted the witness

---

8. Appellant argues that the error of the trial court was further compounded when it denied appellant's motion to strike which was made after Poe testified that he thought the Authority had underpaid Mrs. Cease.

9. 375 P.2d 696, 698–699 (Alaska 1962).

10. In Bridges the purported condemnee-plaintiff objected to the comparables in question.

11. Bridges v. Alaska Housing Authority, 375 P.2d 696, 698–699 (Alaska 1962) (footnotes omitted).

12. Id. at 698 n. 4. The following authorities were cited: California Law Revision Commission, Recommendation and Study Relating to Evidence in Eminent Domain Proceedings A–38 (Oct. 1960); 5 J. Sackman & R. Van Brunt, Nichols' The Law of Eminent Domain § 21.33 (rev. 3d ed. 1962); Annot., 174 A.L.R. 386, 395 (1948); 118 A.L.R. 869, 893 (1939).

13. See 4 J. Sackman & R. Van Brunt, Nichols' The Law of Eminent Domain § 12.3113 [1], at 106 (rev. 3d ed. 1962). In Yonts v. Public Serv. Co., 179 Ark. 695, 17 S.W.2d 886, 887 (1929), the court explained that:

> Evidence showing what the company seeking to condemn has paid for other lands would probably be taken by the jury as indicating the market value when, as a matter of fact, it does not tend to show the market value of the land. A company condemning land might be willing to give more than it was worth, and the owner of land might be willing to take less than it is worth, that is, less than its market value, rather than have a lawsuit. Moreover, when a company seeks to get land or condemn it for public uses, having the power to condemn, the landowner would probably come to some agreement with him rather than have a lawsuit, and this agreement would show a compromise rather than the market value of the land.

Poe to testify to the price paid by the Authority to Mrs. Cease. There remains for determination, however, whether the court's erroneous rulings in this regard were in the nature of prejudicial or harmless error.[14]

■ Poe placed a value of $32,600 on appellee's lot and $13,800 on the buildings for an overall evaluation of $46,400. Appellee's other witnesses gave opinions as to the property's overall value which ranged from $33,000 to $50,000.[15] Poe's use of the Cease sale to the Authority was thoroughly explored on cross-examination. Our study of the record has convinced us that the witness' inclusion of this incompetent sale did not mislead the jury or result in a verdict which was manifestly against the weight of 'the evidence.[16] We hold that the trial court's rulings in regard to Poe's testimony were in the nature of harmless error and do not call for reversal.

Appellant's second contention in this appeal is that the trial court erred in permitting Harvey Pullen, an expert witness called by appellee, to testify as to the separate value of appellee's building considered apart from the value of the land. Pullen was the first witness called at the trial. His expertise lay in his qualification as a civil structural engineer; he specifically disclaimed any expert knowledge of real estate values as distinguished from structural values.[17] Counsel for the Authority objected to Pullen's testimony on the ground that:

[I]t's insufficient to just appraise one part of it, and nothing more. Because the market very well may say it's time to commit this property to another use, and the building has no good—no value to the market.

In overruling this objection, the trial judge stated he would permit the witness

14. In regard to harmless error, Civ.R. 61 reads in part:

No error in either the admission or the exclusion of evidence and no error or defect in any ruling or order or in anything done or omitted by the court or by any of the parties is ground for granting a new trial or for setting aside a verdict or for vacating, modifying or otherwsie disturbing a judgment or order, unless refusal to take such action appears to the court inconsistent with substantial justice.

In Mitchell v. Knight, 394 P.2d 892, 896 (Alaska 1964) (footnote omitted), it was stated that "every error committed in the course of a trial does not call for reversal." See Otis Elevator Co. v. McLaney, 406 P.2d 7, 11–12 (Alaska 1965).

In 5 J. Sackman & R. Van Brunt, Nichols' The Law of Eminent Domain § 18.1 [3], at 135 (rev. 3d ed. 1962), it is stated:

It follows that an exception to the admission or exclusion of evidence in a land damage case will ordinarily not be sustained except in case of manifest error. *Moreover, the modern tendency to restrict the setting aside of verdicts for errors which do not cause substantial injustice is especially noticeable in land damage cases.* (emphasis added)

Accord, Hance v. State Roads Comm'n of Maryland, 221 Md. 164, 156 A.2d 644,

650–651 (1959); United States v. Lowrie, 246 F.2d 472, 474 (4th Cir. 1957); Phillips v. United States, 148 F.2d 714, 716 (2d Cir. 1945).

15. Appellee, as owner, testified that in her opinion the property was worth between $45,000 and $50,000. Appellee's expert, Fred Atkinson, testified to $33,600 value for the land and $8,500 for the structure, or an overall value of $42,100. Another expert who testified for appellee concluded that the land was worth $30,000 and the building $16,800 for a total value of $46,800.

We have already noted that the Authority's sole witness used the sale to Mrs. Cease of the same property.

16. In Forest Preserve Dist. v. Kercher, 394 Ill. 11, 66 N.E.2d 873, 880 (1946), the court said:

It is difficult to try cases of this kind without some improper elements * * * getting into the record, but, unless it can be said that such improper elements go to the extent of misleading the jury and result in a verdict manifestly against the weight of the evidence, such improper element does not warrant a reversal.

Cf. Commonwealth v. Thornbury, 399 S.W.2d 728, 730 (Ky.1966):

17. The witness stated that, "I do not feel I'm qualified on market price of property."

to testify as an expert as to the replacement cost of the building. Appellant argues that in so ruling, the trial judge failed to distinguish "between taking into account the separate items and merely considering them as facts bearing upon the overall market value on the one hand, and estimating the intrinsic value of each item independently, as though each were a separate part of the whole."[18] In short, the Authority argues that under the "unit rule" of valuation it was improper for the trial judge to have admitted testimony as to the value of the structure separate and apart from the value of the property in its entirety. As to the unit rule, it is generally stated that:

An owner is not entitled to have the buildings valued as they stand on the land as separate items in addition to the market value of the land.[19]

Although there are authorities to the contrary, it appears that most courts have adopted the unit rule.[20] In adopting the unit rule, however, we also recognize that there may be instances where deviation from its strictures would be proper. In commenting upon the unit rule, Judge Learned Hand said:

[I]t certainly does not follow, because 'site' and improvements have been inextricably welded, that it is never possible to come at their joint value by attributing one factor to 'site' and another to improvements. Value, especially when we are dealing with non-fungibles, is in application as impalpable a concept as can be, and we should be unwilling to circumscribe the approach to it to the opinions of experts.[21]

On our opinion departure from the unit rule is permissible where "the character

---

18. Appellant cites Mississippi State Highway Comm'n v. Rogers, 236 Miss. 800, 112 So.2d 250, 252 (1959), where by way of dicta the court said:

Others placed separate values upon particular items, including some improvements not taken and some separate parts of the entire parcel, including separate valuation of timber. They then added these particular separate items, and aggregated the value of the lands. The separate items were not used simply as facts bearing on the market value of the remaining land. This method of adducing evidence in eminent domain proceedings was misleading to the jury * * *.

19. 4 J. Sackman & R. Van Brunt, Nichols' The Law of Eminent Domain § 13.11 [2], at 207 (rev. 3d ed. 1962) In City of Chicago v. Callender, 396 Ill. 371, 71 N.E.2d 643, 648–649 (1947), it was stated:

The compensation to be allowed for the property was the value of the land as land with all the improvements on it. The separate value of buildings may only be considered as it affects the value of the land. While replacement cost of buildings is one element which a witness may take into consideration for the purpose of arriving at his estimate of the value of the land, it is not admissible for the purpose of showing the value of the buildings

separate and apart from the land itself. The value of buildings may be considered only in so far as it affects the value of the land. Buildings may not be valued separately.

20. United States v. Certain Land, 69 F. Supp. 815 (S.D.N.Y.1947); Smith v. State Highway Bd., 125 Vt. 54, 209 A.2d 495, 498 (1965); Clancy v. State, 104 N.H. 314, 185 A.2d 261, 263 (1962); Commonwealth v. Swift, 404 S.W.2d 467, 469 (Ky.1966); Barrett v. State, 30 Misc.2d 977, 221 N.Y.S.2d 628, 629 (1961), aff'd, 18 App.Div.2d 854, 236 N.Y.S.2d 422 (1963). Contra, State v. Rooks, 131 So.2d 125 (La.App.1961).

21. United States v. City of New York, 165 F.2d 526, 528–529 (2d Cir. 1948). Compare Martinson v. Iowa State Highway Comm'n, 257 Iowa 687, 134 N.W.2d 340, 342 (1965), where it was said:

In the Ranck case witnesses were permitted to value the land as a vacant lot and to value the improvements located on it separately. We said 'It seems fairly well established that proof of such facts is admissible —not as affording a measure of recovery, but as tending to disclose the real character and conditions of the property—and support the estimates of value given by the witnesses.'

See State Highway Comm'n v. Tubbs, 147 Mont. 296, 411 P.2d 739, 743 (1966).

of the structures is well adapted to the kind of land upon which they are erected."[22] Courts have taken cognizance of the fact that "intrinsic" structural values and economic or market values need not coincide. This is especially true where a building valuable as a structure, is ill-suited to its site, and for this reason has a low market value, adding little or nothing to the value of the parcel as a whole. In cases such as this, the "unit rule" serves to keep evidence of structural value from the trier of fact since it would tend to mislead. However, when there is evidence upon which it may be rationally found that land and building are well matched, the rationale behind the unit rule fails, since in such a case there exists some coincidence between structural and market values. As in the case at bar, evidence of the structural value of the building may aid in a determination of the value of the parcel as a unit.

■ At the time Pullen testified that appellee's building had a replacement value of $30,000,[23] there had been no evidence adduced concerning the building's suitability to the site. This missing foundation evidence was subsequently supplied during appellee's case in chief. In light of the evidence which appellee produced concerning the suitability of the building (as a beauty parlor) considering the location and character of the land, we do not consider that it was error to admit Pullen's testimony as to the value of the building separate and apart from the site. We reach this conclusion for the additional reason that

the trial judge instructed the jury they were to determine "fair market price" which was defined as "the amount of money, in cash, for which the land and improvements thereon would have sold for on July 9, 1965." Under such circumstances, we cannot conclude that the jury was misled by Pullen's testimony.

The superior court's judgment is affirmed.

---

**22.** City of St. Louis v. Turner, 331 Mo. 834, 55 S.W.2d 942, 944–945 (1932). The court went on to say "the cost of the buildings and fixtures, after making proper deductions for depreciation by wear and tear, may be a reasonable test of the amount by which they enhance the market value of the land." See In re Blackwell's Island Bridge Approach, 198 N.Y. 84, 91 N.E. 278, 41 L.R.A., N.S., 411 (1910), where the court concluded that where there was evidence of the structure's suitability to the land,

it was proper for the condemnee to attempt to prove the independent structural value of the land and improvements. Compare State Highway Comm'n v. Anderson, 234 Or. 328, 381 P.2d 707, 709 (1963).

**23.** The witness Pullen testified that appellee's building would cost $30,000 to $33,000 to replace. Additionally, he allowed a 10 per cent depreciation factor in arriving at his estimated replacement cost figure.