**KETCHIKAN COLD STORAGE COMPANY, 9,533 Square Feet of Land, More or Less, Citizens' Utilities Company, a Connecticut Corporation, successor in interest to Ketchikan Cold Storage Company, Appellants,**

**v.**

**STATE of Alaska, Appellee.**

**No. 1198.**

Supreme Court of Alaska.

Nov. 30, 1971.

Jeremiah M. Long of Long, Mikkelborg, Wells & Fryer, Seattle, Wash., Avrum Gross of Faulkner, Banfield, Boochever & Doogan, Juneau, and Robert H. Ziegler of Ziegler, Ziegler & Cloudy, Ketchikan, for appellant.

Richard Richards of Richards, Watson & Hemmerling, Los Angeles, Cal., W. C. Stump of Stump & Stump, Ketchikan, and G. Kent Edwards, Atty. Gen., Juneau, for appellee.

Before BONEY, C. J., and DIMOND, RABINOWITZ, and ERWIN, JJ.

## OPINION

ERWIN, Justice.

The state took certain land in Ketchikan, Alaska, by eminent domain for a street widening project. The property in question consisted of a 25-foot wide strip, which included a portion of a five-story cold storage building. The state deposited $191,725 with the superior court as estimated just compensation for the taking which occurred on December 15, 1966. The case was tried at Ketchikan in July of 1969.

Prior to trial the property owner failed to comply with a discovery order concerning the income history of its operations. The court therefore sanctioned the appellant by entering an establishment-preclusion order stating that the plant had an overall declining economic history and had recently been operating at a loss.

Over the objection of the owner, the case was submitted to the jury solely on the question of the highest and best use of the property. The trial court allowed no evidence to be submitted to the jury concerning monetary valuation of the property. The witnesses were not permitted to testify about the property in monetary terms. Rather the court instructed the jury that in determining the highest and best use of the property they should consider as a fact established by court order that the cold storage plant was operating at a loss. Therefore, included prominently in the evidence before the jury concerning the highest and best use of the taken property were the facts established by the court as a discovery sanction. The jury returned a special verdict stating that the highest and best use of the property on the date of taking was not as a fish cold storage and processing plant, but some other commercial use.

Following the special verdict, counsel for both parties stipulated that the value of the underlying land was $30,000. A judgment reflecting that award was thereafter entered. No compensation was awarded for the five-story cold storage plant. The final award was satisfied out of the $191,725 deposit, most of which was repaid to the state. In addition, $17,909.66 as costs of the state in seeking discovery was assessed against the property owner for his failure to make discovery.

In this appeal the owner contends that the trial court erred (1) in entering a certain establishment-preclusion order, (2) in assessing certain expenses and attorney's fees in connection with the establishment-preclusion order, (3) in requiring a special verdict on the question of highest and best use of the property, while excluding all evidence of its dollar value, (4) in disallowing certain evidence concerning the impact of the pendency of the condemnation proceedings upon the property, and (5) in instructing the jury on the burden of proof.

## I. THE ESTABLISHMENT-PRECLUSION ORDER

In July of 1968 the state served two interrogatories on the owner. These asked

the owner to state in detail, for the years 1954 to 1967, inclusive, its revenues and income from the operation at the property, and its operating, maintenance, and depreciation expenses. The owner was also asked to supply the description, nature, custody, and location of all records reflecting such information.

On September 23, 1968, the state moved to compel answers to the interrogatories. An opposition to the interrogatories was filed October 2, 1968, in which the owner objected to the discovery on the grounds that evidence of profits of a business is inadmissible in a condemnation action, and that the information requested by the interrogatories could not reasonably lead to admissible evidence. After a hearing, the court ordered that the interrogatories be answered within 30 days after service of the order. The order of the court was dated October 15, 1968. Appellant did not comply with the order of the court. On February 25, 1969, the state moved for an order which would establish as proven that from 1954 to 1962 the income from the owner's operations followed a declining trend, while expenses did not proportionately decline; that from 1963 to 1967 expenses exceeded income, resulting in a net loss for each year; and that the aggregate operating expenses related to operating revenues and income over the entire period from 1954 to 1967 showed a total net loss. The state also moved for an order requiring the owner to pay the expenses incurred in obtaining the discovery orders.

On March 14, 1969, the court denied the motion to establish facts, because the owner was about to file answers to the inter-rogatories. At the same time the court ordered payment of certain costs and attorney's fees. It also found that the refusal by the owner to answer the interrogatories was initially without substantial justification, and that the owner failed and refused to comply within a reasonable time with the court's order of October 15, 1968. Answers to the interrogatories were filed March 19, 1969.

On April 4, 1969, the state again moved that certain facts concerning operating revenues and income, set out above, be considered established. The state claimed that the answers to the interrogatories filed by the owner were inadequate. Although the answers disclose the gross revenues received from sale of fish, and detail the operating expenses of the plant, they omit the cost of procuring the fish. Therefore, it is not possible to determine profit or loss from an examination of the answers to the interrogatories. After a hearing, the court on April 24, 1969, modified its previous order and held that the facts requested by the state should be considered established and that the owner should be precluded from introducing evidence controverting such facts.[1]

The question presented is whether, absent a finding of wilful failure by appellant to comply with the initial discovery order of October 15, 1968, the establishment-preclusion order should be upheld. We have concluded that it should not.

When a party refuses to comply with a discovery order, Civil Rule 37(b) provides the court with a flexible list of sanctions. One of the most severe sanctions is the establishment-preclusion order.[2] When

---

1. The precise terms of the order were:

 "1. For each of the years 1954–1962 inclusive, operating revenues and income received by Ketchikan Cold Storage Co. showed a generally declining trend, while expenses of Ketchikan Cold Storage Co. did not proportionately decline; and

 "2. For each of the years 1963–1967, inclusive, operating expenses exceeded operating revenues and income, resulting in a net loss to Ketchikan Cold Storage Co. from each said year; and further

 "3. The aggregate operating expenses of Ketchikan Cold Storage Co., related to its operating revenues and income over the entire period of 1954–1967, inclusive, showed a total net loss."

2. Civ.R. 37(b) (2) provides in relevant part:
 "If a party or an officer or managing agent of a party refuses to obey an order made under subdivision (a) of this rule requiring him to answer designated questions, * * * the court may make such

facts at issue in a controversy are established against one of the parties, he is precluded from introducing testimony to refute the points taken to be established. Thus, in effect, the party has been denied his right to trial on the merits to the extent that matters of fact have been rendered incontestable. The sanction is especially severe when the establishment-preclusion order goes to an issue which is central to the determination of the case. In the present case the jury was instructed that it could consider the cold storage plant's history of declining profits, established by court order, in determining the highest and best use of the condemned property: All other valuation evidence was excluded from the jury's consideration. It is difficult to conceive how the jury had any choice other than to find that the highest and best use of the condemned property was not as a cold storage plant when the only evidence of valuation before them was the declining economic history of the plant as established by court order. Thus, the establishment-preclusion order had a direct bearing on the critical issue determined by the jury: the highest and best use of the property.

Even if the court had allowed into evidence all the indicia of valuation commonly utilized in determining property values in a condemnation proceeding, the establishment-preclusion order would still have had a direct impact upon the ultimate issue in the case: the just compensation for the condemned property. Although income from property is not a decisive factor in determining the value of property, it is a factor to be considered. This is especially true in the case of special use properties where the factor of comparable sales is often not available. It is a serious step in any condemnation proceeding for a court to preclude the property owner from entering into evidence proof of any valuation factor which will aid the trier of fact in determining the just compensation of the property taken.

■ The purpose of the Rule 37 sanctions is to effectuate the discovery process. The discovery rules have replaced common law pleading as the means of clarifying issues prior to trial. This permits the factual and legal issues to be brought into specific focus at an early time. It also may lead to settlement or early termination of lawsuits. Discovery has been quite successful in achieving these goals, and we must not condone any attempt to avoid the process. We cannot, however, allow a procedural rule to frustrate the major purpose of Rule 37, and in fact all the rules of civil procedure, which is to ensure that an individual may have a just determination of his case upon the merits.

■ The United States Supreme Court has stated that federal provisions similar to those of Civil Rule 37 must be read in light of the fifth amendment's guarantee that no person shall be deprived of property without due process of law. Societe Internationale Pour Participations Industrielles Et Commerciales, S. A. v. Rogers, 357 U.S. 197, 209, 78 S.Ct. 1087, 2 L.Ed.2d 1255, 1262 (1958). See also Oaks v. Rojcewicz, 409 P.2d 839, 843 (Alaska 1966). We have concluded that an establishment-preclusion order which prevents full adjudication of a case on its merits is so drastic a sanction that it should be employed only upon the clearest showing that such a course is required.[3]

orders in regard to the refusal as are just, and among others the following:

"[a] An order that the matters regarding which the questions were asked, * * * shall be taken to be established for the purposes of the action in accordance with the claim of the party obtaining the order;

"[b] An order refusing to allow the disobedient party to support or oppose designated claims or defenses, or prohibit-

ing him from introducing in evidence * * * items of testimony * * *."

3. Cf. Gill v. Stolow, 240 F.2d 669, 670 (2d Cir. 1957). This holding is consistent with our decision to uphold an establishment-preclusion order in Bachner v. Pearson, 432 P.2d 525 (Alaska 1967). We emphasized in Bachner that the trial court "could well have concluded that petitioner was recalcitrant and was not in good faith attempting to comply with what was required of him." Id. at 528. In

Although Rule 37 does not in terms require a showing of wilfulness before any of its sanctions come into play, we will *not sustain an establishment-preclusion* order relating to a central issue in a case absent a showing of wilful failure to comply. In Oaks v. Rojcewicz, *supra,* we held that a showing of wilfulness was a prerequisite to a dismissal as a sanction under Civil Rule 37(b) (2) (c). Our approach is in line with a number of cases which have found that the establishment-preclusion order is only appropriate in exceptional situations.[4]

In our opinion the record does not show a wilful refusal on *appellant's part to* comply with the lower court's production order of October 15, 1968. The only evidence of wilful nondisclosure was appellant's delay in making discovery, and the unsupported allegations of opposing counsel that the purpose of the delay was to thwart the discovery process. Lacking the element of wilful noncompliance, the trial court under Rule 37 should not have entered an establishment-preclusion order in this case.

In addition to the establishment-preclusion order, the lower court assessed against appellant $17,909.66 which represented appellee's costs in obtaining and pursuing the discovery order. We feel that this assessment when modified, as we will direct, is an ample sanction under Rule 37 for appellant's tardy and inadequate response to the state's interrogatories. This ruling does not, of course, affect the state's right to seek further discovery in this case.

## II. THE COST BILL

The court assessed against appellant the state's costs of $7,238.37 in obtaining the discovery order and the subsequent costs of $10,671.29 in enforcing that order.[5] We find the lower court's assessment of the state's costs in obtaining the discovery order improper under Rule 37(a). The assessment of the state's costs in enforcing the order is, however, a proper sanction under Rule 37(b) for appellant's failure to comply with the discovery order.

### A. *Costs in Obtaining the Discovery Order.*

A court can only require a refusing party to pay for the other party's costs in obtaining a discovery order when the former's refusal is "without substantial justification."[6] It is not the purpose of Rule 37 to punish a party who innocently and reasonably resists discovery. Thus this sanction is only applied against a

---

his dissent, Justice Rabinowitz disagreed not with the standard utilized by the majority, but with the application of that standard to the case then at bar.

4. Campbell v. Johnson, 101 F.Supp. 705, 707 (S.D.N.Y.1951); 4A Moore's Federal Practice ¶ 37.03 [2.–4], at 37–62 n. 5 (2d ed. 1971).

5. $4084 of the latter amount is attributable to expenses connected with the hearing of March 14, 1969, and $6587.29 to expenses connected with the hearing of April 18, 1969.

6. Civ.R. 37(a) reads in part:
"If a party or other deponent refuses to answer any questions propounded upon oral examination, the examination shall be completed on other matters or adjourned, as the proponent of the question may prefer. Thereafter, on reasonable notice to all persons affected thereby, he may apply to the court in the judicial district where the deposition is taken for an order compelling an answer. Upon the refusal of a deponent to answer any interrogatory submitted under Rule 31 or upon the refusal of a party to answer any interrogatory submitted under Rule 33, the proponent of the question may on like notice make like application for such an order. If the motion is granted and if the court finds that the refusal was *without substantial justification* the court shall require the refusing party or deponent and the party or attorney advising the refusal or either of them to pay to the examining party the amount of the reasonable expenses incurred in obtaining the order, including reasonable attorney's fees." (emphasis added.)

party who entirely disregards the discovery request, who has been unreasonable or recalcitrant in his conduct, or whose refusal has been captious.[7]

After reviewing the record in this case we have concluded that the appellant's initial refusal of discovery was not without substantial justification. Appellant made a timely objection to the interrogatories on the ground that evidence of the profits of a business is inadmissible in a condemnation action, and on the further ground that the information requested by interrogatory could not reasonably lead to admissible evidence. Under Civil Rule 26(b), governing the scope of discovery, one may object to an interrogatory on the grounds that the answer would be inadmissible at trial and would not lead to the discovery of admissible evidence.[8]

■ There is substantial authority that "evidence of the profits of a business conducted upon land taken for the public use is not admissible in proceedings for the determination of the compensation which the owner of the land shall receive."[9] However, the trial court apparently found, and we agree, that this cold storage facility comes within an exception to this general rule permitting evidence of income from unique commercial property.[10] Therefore, the lower court was entirely correct in granting the state's motion for a discovery order. In light of the great weight of authority disallowing evidence of business income from a commercial property in an eminent domain proceeding, however, we find that appellant's initial resistance of the state's

efforts to discover the profits of the cold storage plant had substantial justification. Therefore, to tax appellants with the state's costs in obtaining the discovery order constituted a clear abuse of discretion.

**B. Costs as a Sanction for Failure to Comply with the Discovery Order.**

■ We uphold the trial court's assessment of the state's costs in seeking enforcement of the October 15 discovery order.

After the October court order, appellant was no longer entitled to resist the state's discovery efforts. However, appellant did not provide appellee with the requested information. The state was forced to bring appellant into court once again on March 14, 1969, to demand compliance with the discovery order. Appellant offered no excuse for the lengthy delay but promised to provide the answers to the state's interrogatories immediately. When the long-awaited answers were examined, they were incomplete and the state appeared in court once again to protest on April 18, 1969.

We have held that the severe sanction of an establishment-preclusion order was not justified in this case. But this type of costly tardiness and lack of cooperation with the discovery process does justify the imposition of sanctions under Rule 37 (b). That rule permits the court, in its discretion, to enter "such orders in regard to the refusal as are just." The court chose in this instance to make appellant bear the full brunt of the state's costs in enforcing the October 15 discovery order.

7. 4A Moore's Federal Practice ¶ 37.02 [10.–1], at 37–43 to 37–44 nn. 2–5 (2d ed. 1971) ; 2A Barron & Holtzoff, Federal Practice and Procedure § 852, at 534–36 (1961) ; Willys Motors v. Northwest Kaiser-Willys, 18 F.R.D. 473, 474 (D. Minn.1956) ; Grimmett v. Atchison, Topeka & Santa Fe Ry. Co., 11 F.R.D. 335, 336 (N.D.Ohio 1951).

8. Rule 26(b) reads in part:
"[T]he deponent may be examined regarding any matter, not privileged, which

is relevant to the subject matter involved in the pending action * * *. It is not ground for objection that the testimony will be inadmissible at the trial if the testimony sought appears reasonably calculated to lead to the discovery of admissible evidence."

9. 5 Nichols, Eminent Domain § 19.3 [1], at 19–49 (Sackman, 3d rev. ed. 1969).

10. *Id.* § 19.3 [5] at 19–66.

Absent a clear abuse, we will not interfere with the court's broad discretion in this area.[11]

The $7,238.37 awarded appellee as costs in obtaining the discovery order is disallowed. The award of $10,671.29 related to the enforcement of that order is affirmed.

## III. SPECIAL VERDICT ON HIGHEST AND BEST USE.

■ The property owner next contends that it was error for the court to submit to the jury for a special verdict the question of highest and best use of the subject property, and to disallow any other evidence of valuation prior to the finding that the highest and best use of the property was as a cold storage plant.

At the outset of the trial the state sought to prevent the property owner from introducing any evidence as to the value of the cold storage plant. Since it had already been established that the plant had an overall history of declining profits during the last 13 years of its operation, and was operating at a net loss during its final four years, the state contended that it was improper to allow the property to be valued as a cold storage plant.

The court ruled, *sua sponte,* that unless the jury found pursuant to a special verdict that the highest and best use of the condemned property was as a cold storage plant, the owner would not be allowed to introduce any evidence as to the value of the plant. The court instructed the jury that in determining the highest and best use of the property, it could consider the declining economic picture of the plant as described in the establishment-preclusion order. The

jury thereafter returned the following special verdict:

"We the jury * * * do find the Highest and Best Use of the subject property on December 15, 1966, was *not* its use at that time as a fish cold storage processing plant, but rather another commercial use."

We have concluded that the court's isolation of the factor of highest and best use from the other indicia traditionally used in valuing properties taken by eminent domain constitutes reversible error. We think that the submission of the special verdict on highest and best use, coupled with the suppression of other evidence of value, would necessarily confuse the jury and thwart the purpose of the eminent domain proceeding—to provide the property owner with a just compensation for his lost property.

In eminent domain proceedings the basic issues are whether property is being condemned for a public use and the amount of just compensation to be paid to the owner. Because public use is rarely contested, just compensation is usually the only issue to be litigated.

■ The term just compensation implies full indemnification to the owner for the property taken. In other words the property owner should be placed as fully as possible in the same position as he was in prior to the taking of his property. Just compensation has long been equated with the fair market value of the property taken. Among the major factors used to determine the fair market value of real estate are: net income from the land; reproduction cost of improvements which enhance the

---

11. The state hired a recognized eminent domain attorney to litigate the case. He presented the court with a detailed itemization of his time sheets in connection with the state's motion to tax appellant with its costs in making discovery. The costs were those which he was charging the state for his work in enforcing the discovery order. We do not feel that important position of the full costs of opposing counsel in pursuing a discovery order would be an appropriate or a just sanction in every case. In the present case the sanction, though onerous, was justified by appellant's lengthy delay in making discovery and the handicap placed upon the state in the preparation of its case.

value of the land; [12] comparable sales; and other uses for which the property is suited.

The procedure utilized by the trial court, which required a special verdict as to whether the property was currently being used for its highest and best use, and which barred other evidence of value, is unprecedented.[13] It should be noted that counsel for each party could find no authority for this artificial bifurcation of valuation factors in an eminent domain proceeding. This is understandable. The appraisal of property is not an exact science. It requires a complex balancing of the various principles and techniques which are utilized in reaching the final estimate of value. The factors entering into the appraisal process must be considered in their interrelationship. For this reason the prevailing rule in most jurisdictions is to allow the property owner to present proof of all the various elements which are probative of the value of the condemned property.[14]

Under the trial court's procedure, once the jury found that the highest and best use of the condemned property was not as a cold storage plant, the property owner could receive no compensation for the structural improvement on the land. In effect the court was saying that unless property is being used for its highest and best use, structures on the property do not add to its value. This application of the principle of highest and best use is, however, incorrect. A prospective purchaser might not view a special purpose structure as representing the highest and best use of the property, yet he might still find the structure to have value. Value might exist for several reasons. The structure might, through additional investment and alteration, be capable of achieving the highest and best use of the property. Therefore, one might be willing to offer something for the structure, discounting its reproduction cost by the amount of its obsolescence and by the amount necessary to bring it to a condition where it can be used profitably. What is at work is the principle of substitution: that the cost of obtaining an effective substitute for the property will influence its market value. Furthermore, the structure may be adaptable to some profitable use other than the highest and best use of the land.

An additional observation must be made. The state argued below that since, under the establishment-preclusion order, the unprofitable character of the cold storage business had been made clear, the plant was valueless. However, the fact that the business conducted on the property is unprofitable, or even fails, does not necessarily render the building valueless. In re Chrystie St., etc., In City of New York, 236 App.Div. 321, 258 N.Y.S. 243, 248–249 (App.

12. Reproduction cost is increasingly disfavored by appraisers in cases where the property is of a type ordinarily bought and sold in a ready market. But where a special purpose property is being valued, reproduction cost is often resorted to as a guide. The question to be asked in such cases is whether the special use of the property is suited to the land. In re Blackwell's Island Bridge Approach, 198 N.Y. 84, 91 N.E. 278 (1910). For reproduction cost should not be admissible if the special purpose facility does not enhance the value of the land. State, by State Road Commission v. Boyd, 129 W.Va. 715, 41 S.E.2d 665 (1947).

13. It is not clear from the record, but it is possible that the court based its action on an interpretation of Alaska State Housing Authority v. DuPont, 439 P.2d 427 (Alaska 1968). There we recognized one aspect of the "unit rule", holding that the structure is well adapted to the land an owner is not entitled in all cases to have buildings valued separately in addition to the market value of the land. But we also held that a summation of land and building values is permissible when on which it is situated. In *DuPont* there was evidence of building replacement value entered before evidence of suitability of the building to the land. However, the missing evidence was later supplied. We concluded that it was not error to admit testimony of value of buildings separate and apart from that of the site. It is possible that the court in the case before us was attempting to apply the *DuPont* principle in reverse.

14. 4 Nichols, *supra* note 9, § 12.2 [3], at 12–83 to 12–85.

Div.1932), aff'd, 260 N.Y. 583, 184 N.E. 102 (1932). The business may be unprofitable for a number of reasons such as bad management, faulty financing, or temporary market conditions.

Where the property is of a type rented out to tenants, it may be easier to correlate the extent of rental income to the question of whether the building is suitable to the land. Even then appraisers often ignore the actual income to the owner and reconstruct the income and expense statement to project it into a probable future. S. Kahn, F. Case, A. Schimmel, Real Estate Appraisal and Investment, 116–118 (N.Y.1963). But when the owner himself occupies the property to conduct his business, and the property is used as an integral part of his business operations, it becomes most difficult, if not impossible, to segregate the income or loss attributable to the property as distinct from the business enterprise. In such cases the vital question is not whether the business is losing money. It is whether the property is capable of being used profitably.

We think this distinction is vital in Alaska. The fishing industry entails a high risk enterprise. It also offers rewards for the skillful and diligent. Beyond that a considerable element of chance comes into play. Market fluctuations, biological conditions, and other impersonal factors can determine profit or loss in this field even for shrewd entrepreneurs. It is understandable, then, that one might lose money in a fish processing operation and yet keep on with the enterprise. Nor does lack of profit necessarily render the property valueless. A more plucky or more knowledgeable operator may be able to make the plant turn a profit and provide an adequate return on investment.

The trier of fact may take business losses into account in determining the value of the condemned property, just as a prospective purchaser will consider the losses when deciding whether to buy the property intending to devote it to its present business. But the mere fact that an operation conducted on a property has lost money does not render the operation's plant valueless.

In conclusion, how much value should be assigned to the condemned property is a challenging problem, both for appraisers and triers of fact. We think the owner is entitled to put on his proof as to the various elements probative of property values as best he can. Therefore, submission of this case to the jury for a special verdict on highest and best use of the property was prejudicial to the owner and an abuse of discretion by the court.

## IV. EVIDENCE CONCERNING THE EFFECT OF THE PENDENCY OF THE CONDEMNATION ACTION.

Appellant next contends that it was error for the trial court to disallow appellant's offers of proof concerning the deleterious effect of the pendency of the condemnation action upon the property.[15]

15. The exact offer of proof made by appellant's counsel was this:
"MR. LONG: If permitted to so testify Mr. Thompson would state that in his consideration of the Ketchikan Cold Storage Company property he considered that there had been a pendency of condemnation, a threat of condemnation since the mid 1950's, that from 1956 until 1966 the only maintenance which had been performed on the Ketchikan Cold Storage Company property had been absolutely necessary maintenance;
"That prior to 1956 capital expenditures were made in installing two flake ice machines on the roof of the building, that a row of piling had been removed and new piling had been substituted therefor, that a new compressor was installed in the engine room; and
"That prior to 1950 whatever expenditures were necessary to make this plant competitive with other plants in the industry were made on the property, that after 1956 the only maintenance that was done was that which was absolutely necessary, and that the reason for the lack of the maintenance on this property, the principal reason, was that the property was going to be condemned eminently [sic];
"That the property owner was informed from 1950 on that the property would be condemned eminently [sic], at any day,
* * *
* * * * *

The issue here is not whether the pendency of condemnation should be considered because of the depressant effect on market value. The question, more precisely, is whether the owner may show that only minimal maintenance was performed on the property because it was expected that the property would be condemned.

 Under one view, a management decision to forego maintenance or improvements should not be admitted into evidence. The argument is that any diminution in the value of the property is not the fault of the condemnor, but is a matter exclusively within the control of the owner. Appellee quite properly points out that a condemnee cannot recover for a value that his property would have had if improvements had been mad. It is also the rule that a condemnee will not be penalized for improving his property prior to condemnation, if this is done in good faith. State ex rel. State Highway Commission v. Fenix, 311 S.W.2d 61, 63–64 (Mo.App.1958).

However, if condemnation is a real potentiality, an owner might well be afraid to expend money on maintenance or improvement. He has no means of knowing with any certainty whether the expenditure will be fully compensated in an ultimate condemnation award. The trier of fact may find that the improvement did not enhance the total value of the property to the extent of the cost of the improvement. Nevertheless, in many cases the reasons for a lack of maintenance or improvement are of little importance. For while the owner is compensated for the property in its condition at the time of condemnation, this is to an extent counterbalanced by the fact that he has not expended money which he might have done if condemnation were not in the offing.

"And that the subject property contained vacant land which was unimproved which had contained a structure which was destroyed in a fire, and that the city

But in this case we think the offered testimony was relevant. The thrust of the state's case was that the cold storage structure was totally obsolete. That portions of the property were poorly maintained or dilapidated support an inference that the owner regarded the property as lacking permanent economic value as a cold storage plant. In these circumstances we think that the owner was entitled to present the offered proof in order to counteract the inference which the state sought to draw. Certainly the refusal of the city to allow building permits in the area had an important bearing on this issue.

We hold that it was reversible error to sustain the state's objection to the offered testimony. The state, of course, must be allowed ample cross-examination of the witness on the subject matter of his testimony.

## V. BURDEN OF PROOF.

Appellant's final specification of error concerns the trial court's jury instruction that the burden of proof in a condemnation proceeding is upon the property owner to establish the highest and best use of the condemned property.

 In State v. 45,621 Square Feet of Land, 475 P.2d 553, 555 (Alaska 1970), we held that "instructions on burden of proof * * * are inappropriate in condemnation actions." On retrial of the case at bar that decision will be controlling. We note here only that the instruction given below on burden of proof exacerbated the injury done appellant's case by the trial court's improper severance of the concept of highest and best use from the other indicia of property value.

The case is reversed and remanded for further proceedings in accordance with this opinion.

CONNOR, J., not participating.

would issue no building permits for any property that was within the proposed right-of-way."